ALLEN v SOUTHEASTERN MICHIGAN TRANSPORTATION
AUTHORITY

Docket No. 69073. Submitted December 8, 1983, at Detroit.—Decided
March 5, 1984.

Donald Allen applied for a job as a bus driver with Southeastern
Michigan Transportation Authority. Allen was given a pre-
employment physical examination by a physician selected by
SEMTA. The physician refused to certify Allen for employ-
ment, finding that he suffered from high blood pressure and an
arthritic back condition. After receiving treatment from his
personal physician, Allen transmitted a letter of his personal
physician to SEMTA in which his physician indicated that
Allen's blood pressure, with medication, was within normal
limits and that his moderate arthritis would not endanger the
public safety by his driving of a bus. Thereafter, Allen returned
to the physician selected by SEMTA who had previously exam-
ined him. The physician did not recognize Allen, and certified
him as physically fit for employment as a bus driver. SEMTA
refused to reconsider its refusal to employ Allen. Allen filed an
action in Wayne Circuit Court against SEMTA, alleging that
SEMTA violated his rights under the Handicappers' Civil
Rights Act. The court, Roman S. Gribbs, J., entered judgment
for the defendant and subsequently denied Allen's motion for a
new trial. The plaintiff appealed, alleging that the trial court
did not apply the correct standard in deciding claims under the
Michigan Handicappers' Civil Rights Act and that the trial
court's decision was contrary to the great weight of the evi-
dence. Held:

  1. The trial judge was correct in looking at the conduct of the

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes §§ 278, 279.
[1-3] 15 Am Jur 2d, Civil Rights §§ 135, 248.5.
  Construction and effect of state legislation forbidding job discrimi-
    nation on account of physical handicap. 90 ALR3d 393.
[2, 3] 14 Am Jur 2d, Carriers § 909.
  Liability for jury to or death of passenger from accident due to
    physical condition or carrier's employee. 52 ALR3d 669.
[4] 5 Am Jur 2d, Appeal and Error § 839 et seq.

employer. The employer's burden of proof is to demonstrate a rational basis in fact for its conduct because, once a plaintiff demonstrates that he is handicapped and was refused employment because of the handicap, the burden of proof shifts to the defendant to justify its action. Here, the trial court did not err in holding that SEMTA must show that Allen's physical condition would interfere with his ability to control and operate a bus safely and further that hiring the plaintiff would be hazardous to the safety of passengers, other drivers, or the public and that hiring such a driver would violate the high standard of care required of the defendant as a common carrier.

2. The trial court's decision was not contrary to the great weight of the evidence. The court relied upon the testimony of two doctors regarding Allen's arthritic condition and its effect upon his ability to operate a bus safely.

Affirmed.

1. Civil Rights — Handicappers' Civil Rights Act.

The Michigan Handicappers' Civil Rights Act, being remedial in nature, should be liberally construed (MCL 37.1101 *et seq.;* MSA 3.550[101] *et seq.).*

2. Civil Rights — Common Carriers — Handicappers' Civil Rights Act.

The standard necessary to justify a refusal to employ is less onerous for common carriers of passengers than for other employers because common carriers are charged both under considerations of public policy and by the operation of law with exercising an extraordinarily high standard of care for the safety of their passengers.

3. Civil Rights — Common Carriers — Handicappers' Civil Rights Act — Refusal To Employ.

A defendant common carrier has the burden of proving that there was a rational basis in fact for its conduct once a plaintiff, alleging that he was refused employment with the common carrier because he was handicapped, demonstrates that he was handicapped and was refused employment because of that handicap; that burden of proof encompasses two analytically distinct points: (1) was the plaintiff physically able to perform the duties of the position he applied for, and (2) would hiring the plaintiff be hazardous to the safety of passengers, other employees, or the public, and, if so, would hiring such a driver violate the high standard of care required of the defendant as a common carrier.

4. APPEAL — FINDINGS OF FACT — COURT RULES.
  The Court of Appeals will not set aside a trial judge's findings of
  fact unless they are clearly erroneous (GCR 1963, 517.1).

*Buchanan & Buchanan* (by *Thomas J. Azoni),* for
plaintiff.

*Robinson, Smith & Stanfield, P.C.* (by *Thomas A.
Smith),* for defendant.

Before: T. M. BURNS, P.J., and MACKENZIE and
R. ROBINSON,* JJ.

R. ROBINSON, J. Plaintiff was 46 years old when,
on October 12, 1976, he submitted an application
for employment with defendant as a bus driver for
defendant's public transportation system, which
serves southeastern Michigan. On April 21, 1977,
plaintiff was given a pre-employment physical ex-
amination by Dr. Saul Margules, a physician se-
lected by defendant. The examination was con-
ducted in conformity with the Federal Motor Car-
rier Safety Regulations, 49 CFR 391.41-391.49, as
adopted by the Federal Highway Administration.
Defendant's policy was to follow these standards in
its pre-employment physical examination of pro-
spective bus drivers. Based on the examination,
Dr. Margules determined that plaintiff suffered
from high blood pressure, with a reading of 160/
100, and from an arthritic back condition, diag-
nosed as marked hypertrophic arthritic lipping. As
a result of these findings, Dr. Margules refused to
certify plaintiff for the employment he sought.

On the day he failed the physical examination,
plaintiff went to his private physician, Dr. Luis
Nino, for an examination and treatment of the
conditions found by Dr. Margules. On May 27,

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment.

1977, in a letter which plaintiff transmitted to defendant, Dr. Nino reported that, with medication, plaintiff's blood pressure was then within normal limits, and the doctor opined that plaintiff's moderate arthritis would not endanger the public safety by his driving a bus.

On June 16, 1977, plaintiff returned to Dr. Margules, of his own volition, and requested that he be given the Bureau of Motor Carrier Safety physical "identical to the one that SEMTA employees took". Dr. Margules, without recognizing plaintiff from his previous visit and without viewing an x-ray of his back, certified him as physically fit for employment as a bus driver.

Plaintiff had driven buses for the Detroit Streets and Railways from 1968 to 1970, and for the Detroit Board of Education from 1975 to 1979, both jobs requiring the passing of a physical examination similar to that administered by defendant. Plaintiff was employed as a commercial truck driver from 1979 to the date of the trial. During these employments, he experienced no driving problems associated with either blood pressure or arthritis.

Although defendant was made aware of the results of Dr. Nino's examination, of Dr. Margules's second examination, and plaintiff's driving history, it refused to reconsider its refusal to employ him.

Had plaintiff's problem involved only his blood pressure, it seems clear that this matter would have been resolved short of litigation, since defendant acknowledged that its practice was to hire examinees with high blood pressure who were able to bring it within normal limits through treatment and to process them through the next training class following their successful exam. The trial

judge, therefore, correctly centered his attention on the arthritis problem. He applied the federal standard in common-carrier cases and found that there was a rational basis in fact for defendant's refusal to hire plaintiff.

Plaintiff's challenge of the trial court's decision raises two issues.

## I

*Did the trial court apply the correct standard in deciding claims under the Michigan Handicappers' Civil Rights Act, MCL 37.1101 et seq.; MSA 3.550(101) et seq.?*

Those portions of the statute which are pertinent to this inquiry state:

"(b) 'Handicap' means a determinable physical or mental characteristic of an individual or a history of the characteristic which may result from disease, injury, congenital condition of birth, or functional disorder, which characteristic:

"(i) For purposes of article 2, is unrelated to the individual's ability to perform the duties of a particular job or position * * *." MCL 37.1103; MSA 3.550(103).

"(1) An employer shall not:

"(a) Fail or refuse to hire * * * an individual because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position." MCL 37.1202; MSA 3.550(202).

Plaintiff correctly argues that such a statute, being remedial in nature, is to be construed liberally rather than literally. 90 ALR3d 393, 393-394.

We also think that plaintiff has correctly assessed the legislative intent in enacting the handicappers' act as mandating the employment of the handicapped to the fullest extent reasonably possi-

ble. See comments of Senator Faust, 1976 Senate Journal, p 590.

The appellate courts in Michigan have not heretofore had occasion to address the question of what criteria under the act justify a refusal to employ, and the act offers us no guidance other than the requirement that refusal to employ is justified if the individual's defect is related to his ability to perform the duties of the job which he seeks. This does not tell us what standard of proof is necessary to establish the relationship.

We are not without guidance from other sources, however, and, without exception, when courts have had occasion to consider the standard necessary to justify a refusal to employ, they have established a different (and less onerous) standard for common-carrier employers than for other employers when the safety of others is at stake.

The rationale for imposing a more lenient standard upon common carriers than on other employers has been found by the courts in the higher standards of care which the law imposes on common carriers:

"Motor bus carriers, along with all common carriers, are charged both under considerations of public policy and by the operation of law with exercising an extraordinarily high standard of care for the safety of their passengers." *Usery v Tamiami Trail Tours, Inc,* 531 F2d 224, 231 (CA 5, 1976).

### The Federal Cases

*Hodgson v Greyhound Lines, Inc,* 499 F2d 859 (CA 7, 1974), and *Usery v Tamiami Trail Tours, Inc, supra,* examined the question of the appropriate standard within the context of the federal Age Discrimination in Employment Act of 1967, 29

USC 621 *et seq. Diaz v Pan American World Airways, Inc,* 442 F2d 385 (CA 5, 1971), examined the question as it arose under the sex discrimination ban of the federal Civil Rights Act of 1964, 42 USC 2000e-2(a)(1), (e).

Both of these statutes contain an exception to otherwise discriminatory conduct by an employer "for bona fide occupational qualifications (BFOQ) reasonably necessary to normal operation of the particular business", and much of the discussion in those cases dealt with whether the employer's exclusion of the respective plaintiff from employment because of age (or sex) was a BFOQ reasonably necessary to the normal operation of the employer's business. While this exception is not found in the state anti-discrimination statutes, there is language in these federal opinions which, as we shall see, has been adopted in the state cases. After emphasizing the fact that safe transportation of its passengers is the primary function of a common carrier, and that, therefore, the court's concern goes beyond the welfare of the job applicant, the courts held that in order to earn the benefit of the exception, the employer had to prove that its discriminatory standard had "a factual basis" or, as further refined, "a rational basis in fact".

"Greyhound must demonstrate that it has a rational basis in fact to believe that elimination of its maximum hiring age will increase the likelihood of risk of harm to its passengers." *Hodgson v Greyhound, supra,* p 863.

*Usery v Tamiami Trails, Inc, supra,* emphasized with the following language the leeway granted to common carriers over other employers:

"The greater the safety factor, measured by the likeli-

hood of harm and the probable severity of that harm in case of an accident, the more stringent may be the job qualifications designed to insure safe driving." *Usery, supra,* p 236.

## THE STATE CASES

In *Boynton Cab Co v Dep't of Industry, Labor & Human Relations,* 96 Wis 2d 396; 291 NW2d 850 (1980), Eli Godfried was denied employment with plaintiff cab company because he had only one hand, the cab company relying on the Federal Motor Carrier Safety Regulations as justification for its hiring policy:

"(b) a person is physically qualified to drive a motor vehicle if he—
"(1) Has no loss of a foot, a leg, a hand or an arm". FMCSR § 391.41.

When Godfried complained of discrimination under Wisconsin's handicap statute, Ch 275, § 18, Laws of 1975, which states:

"111.32(5)(f). It is discrimination because of handicap:
"(1) For an employer * * * to refuse to hire * * * any individual * * * unless such handicap is reasonably related to the individual's ability adequately to undertake the job-related responsibilities of that individual's employment,"

the cab company defended under the following provision of the statute:

"111.32(5)(f). The prohibition against discrimination because of handicap does not apply to failure of an employer to employ * * * any person who because of a handicap is physically or otherwise unable to efficiently perform, at the standards set by the employer, the duties required in that job * * *."

The Wisconsin Supreme Court held that the trial court and the Court of Appeals erred in imposing upon Boynton the burden of proving to a reasonable probability that its rule against employing one-handed drivers was necessary in light of its acknowledged obligations as a common carrier. The Court enunciated the following as the proper standard:

"We conclude that * * * the proper burden to be borne by Boynton was to show that its hiring standard bore a rational relationship to the safety obligations imposed upon a common carrier of passengers and that the standard used by Boynton was not the result of an arbitrary belief lacking in objective reason or rationale." *Boynton, supra,* p 854.

In *Lewis v Metropolitan Transit Comm,* 320 NW2d 426 (Minn, 1982), George Wells was discharged from his employment as a bus driver for inability to meet the 20/40 visual acuity requirement of the Federal Motor Carrier Safety Regulations which the Transit Commission, like the employer in *Boynton, supra,* had adopted as its standard for employment. The driver claimed discrimination under the St. Paul Legislative Code, § 183.03 of which provides:

"Except when based on a bona fide occupational qualification, it shall be unlawful
"2. For an employer, because of * * * disability
"(b) to discharge * * * an employee;" .

Section 183.02 further states:

"2. It is a defense to a complaint or action brought under this chapter that the person bringing the complaint or action suffers from a mental or physical disability which poses a serious threat to others."

The Minnesota court treated the transit commission's vision qualification as a BFOQ exception to the prohibition against employment discrimination and adopted the *Hodgson, supra,* standard:

"Where consideration for the safety of passengers and the public is involved, we adopt that standard articulated in *Hodgson.* In this case, a bona fide occupational qualification is established if there is a rational basis in fact to believe that elimination of the MTC vision standard would increase the likelihood of risk of harm to MTC passengers." *Lewis, supra,* p 431.

Like the employers in the Wisconsin and Minnesota cases, defendant SEMTA, although not engaged in interstate commerce and therefore not subject to the federal highway regulations, has nevertheless adopted those regulations as its guide in establishing standards of physical fitness for its drivers. 49 CFR 391.41(b)(7) states that an individual is physically qualified to drive who:

"Has no established medical history or clinical diagnosis of * * * arthritic * * * disease which interferes with his ability to control and operate a motor vehicle safely."

In the instant case we believe that the Michigan Legislature, by disqualifying from employment any individual whose defect can be shown to be related to the individual's ability to perform a particular job, is providing essentially the same defense to an employer that.the federal and state acts which we have examined provide to employers in those jurisdictions. We recognize, as did the courts in those jurisdictions, the higher standard of care placed on common carriers. We recognize, too, as did those other courts, the catastrophic results that could flow from imposing too heavy a burden on the

employer in a common-carrier case to justify its discriminatory standard. Based on these considerations, we believe that the trial judge was correct in looking at the conduct of the employer in this situation and in establishing as the burden of proof a rational basis in fact for the employer's conduct. This burden is on the defendant. Once a plaintiff demonstrates that he is handicapped and was refused employment because of the handicap, the burden of proof shifts to the defendant to justify its action under 49 CFR 391.41(b)(7). *Boynton, supra. Boynton* further defined the employer's burden:

"Boynton then had the burden of showing that Godfried was physically unable to efficiently perform the duties of a cab driver at the standard set by Boynton. This burden of proof encompasses two analytically distinct points: (1) Was Godfried physically able to perform the duties of a Boynton cab driver; and (2) would hiring Godfried be hazardous to the safety of passengers, other drivers, or the public; and, if so, would hiring such a driver violate the high standard of care required of Boynton as a common carrier." *Boynton, supra,* p 856.

The Court in *Boynton* found that Boynton had sustained the above burden of proof by voluntarily adopting and relying upon the federal regulations as a hiring standard. By so holding, it rejected the contention that the common-carrier employer must come forth with specific proof that the employee was unable physically to perform the duties of the job sought.

At this point, *Boynton* and the case before us part company. Godfried was rejected for employment under a section of the federal regulations which unconditionally disqualified one for the loss of a hand. Defendant, here, rejected plaintiff under a section of the same regulations which disquali-

fies one for an arthritic condition *which interferes with his ability to control and operate a motor vehicle safely.* Merely demonstrating that plaintiff has arthritis in his spine is not enough. To satisfy the first prong of the test laid out in *Boynton,* defendant in our case must show that plaintiff's condition interferes with his ability to control and operate a bus safely. Defendant must further show that hiring plaintiff would be hazardous to the safety of passengers, other drivers, or the public and that hiring such a driver would violate the high standard of care required of defendant as a common carrier. *Boynton, supra.*

In reaching our conclusion, we are not unmindful of *Wardlow v Great Lakes Express Co,* 128 Mich App 54; 339 NW2d 670 (1983), which was recently decided by another panel of this Court. But we point out that the facts in that case did not raise an issue involving the safety of third persons. See the emphasis placed on this consideration by Judge Joiner in *Tuohy v Ford Motor Co,* 490 F Supp 258 (ED Mich, 1980).

## II

*Was the trial court's decision on the facts contrary to the great weight of the evidence?*

The evidence before the trial court on the relationship between plaintiff's arthritis and the job which he sought was conflicting. The burden, initially, was on the plaintiff to prove that he was a handicapped person within the meaning of the act and that this caused him to be denied employment. He accomplished this through the testimony of his medical experts by showing (1) that he had a physical defect and (2) that his defect was unrelated to his ability to perform the job he sought.

He further proved that defendant had rejected him for employment because of his handicaps. This prima facie case having been made, the burden then shifted to defendant to justify its conduct. The trial judge correctly defined the burden of proof on this issue. While there is some ambiguous language concerning who bore that burden, he completed his opinion with the finding that "defendant had ample basis for refusing to hire plaintiff * * * and in concluding that his handicap was related to the individual's ability to perform the duties of the bus driver for SEMTA", thus properly placing the burden on defendant.

This Court will not set aside a trial judge's findings of fact unless they are clearly erroneous. GCR 1963, 517.1.

The trial judge did not, in his findings of fact, specifically address the propriety of defendant's physical requirements for employment (the second prong of the *Boynton* burden-of-proof requirement). It is, however, undisputed that, although defendant was not subject to the Federal Motor Carrier Safety Regulations because it was not engaged in interstate commerce, it had voluntarily adopted that portion of the regulations establishing physical standards for employment and had applied them in this case. Following *Boynton, supra,* and recognizing the expertise of the Federal Highway Administration which promulgated those regulations, we hold that this proof satisfies the second prong of the *Boynton* burden-of-proof requirement in that use of the federal regulation as a hiring standard, although not mandatorily imposed upon defendant, demonstrated a rational relationship to the safety obligations imposed upon a common carrier of passengers.

The trial judge did address the first prong of the

*Boynton* burden-of-proof requirement, *i.e.,* the ability of defendant, with his arthritic spine, to control and operate a motor vehicle safely. He considered plaintiff's good record over the years as a bus driver, the testimony of Doctors Mandel and Margules to the effect that plaintiff had a limitation in the range of motion in his lower spine due to arthritis, the testimony of Dr. Margules as to the importance of a full range of motion in this area to enable plaintiff to turn and look to the rear in order to evaluate safety conditions, and the greater expertise of Dr. Margules in the area of safe operation of buses and concluded that, because of his arthritis, plaintiff was unable to operate a bus safely. This finding was not clearly erroneous.

Affirmed. No costs, a public question being involved.