HINES v GRAND TRUNK WESTERN RAILROAD COMPANY

Docket No. 75351. Submitted January 16, 1985, at Detroit. Decided April 9, 1985.

Frederick H. Hines, Jr., was hired to work as a switchman by Grand Trunk Western Railroad Company after Hines was found to be physically qualified for hire by Grand Trunk's chief medical officer. Hines later became a fireman and, after examination, qualified to become a yard engineer. He was studying to become a fully qualified engineer when he was disqualified and taken out of service as a fireman pursuant to Grand Trunk's policy that any insulin-dependent diabetic cannot be in train service. Hines had been placed on insulin approximately two years after being hired and was disqualified for train service following a physical examination in which his blood sugar was determined to be too high. Hines contacted Grand Trunk's personnel department and hired an attorney to try to get his job back, but was unsuccessful. He filed suit against Grand Trunk Western Railroad Company in Wayne Circuit Court alleging that he was disqualified in violation of the Michigan Handicappers' Civil Rights Act. Following trial, the jury awarded Hines $793,000 in damages, plus interest and costs. Defendant appealed, and plaintiff cross-appealed arguing that the trial court erred by not taxing attorney fees on defendant under the Michigan Handicappers' Civil Rights Act. *Held:*

1. The trial court did not abuse its discretion in refusing to admit evidence of the recommended safety standards promulgated by the American Association of Railroads. While the evidence may have been relevant, defendant failed to lay a proper foundation for admission of the evidence.

2. *The trial court did not abuse its discretion in allowing the*

REFERENCES

Am Jur 2d, Civil Rights §§ 3 *et seq.*, 412, 441 *et seq.*

Construction and effect of state legislation forbidding job discrimination on account of physical handicap. 90 ALR3d 393.

Recovery of damages as remedy for wrongful discrimination under state or local civil rights provisions. 85 ALR3d 351.

Actual damages as a necessary predicate of punitive or exemplary damages. 17 ALR2d 715.

American Diabetic Association standards to be admitted into evidence.

3. The trial court did not err when it instructed the jury that a common carrier such as Grand Trunk must always make a determination of the ability of each individual handicapped employee to perform the job. The instruction given was consonant with Michigan law at the time.

4. There was no error on the part of the trial court in declining to grant remittitur. The amount awarded to plaintiff falls within the range of the evidence presented.

5. Defendant's argument that under the language of the Michigan Handicappers' Civil Rights Act plaintiff is not handicapped is without merit.

6. The trial court properly declined to consider an award of attorney fees as an element of costs.

Affirmed.

1. EVIDENCE — RELEVANCY — APPEAL.

A trial court's decision as to the relevance of evidence will not be reversed absent a clear abuse of discretion.

2. CIVIL RIGHTS — MICHIGAN HANDICAPPERS' CIVIL RIGHTS ACT — COMMON CARRIERS — JURY INSTRUCTIONS.

It was not error for a trial court to give a jury instruction to the effect that a common carrier must always make a determination of the ability of each handicapped employee to perform the job where the instruction given was consonant with Michigan law at the time of the accrual of the cause of action in the case, even though the law subsequently was changed; it is the law applicable at the time of the accrual of the cause of action which controls.

3. DAMAGES — MITIGATION OF DAMAGES — TORTS — CONTRACTS.

It is the defendant's burden in tort and contract actions to show that the plaintiff has failed to mitigate damages.

4. DAMAGES — MITIGATION OF DAMAGES — JURY INSTRUCTIONS.

The standard jury instruction on mitigation of damages should not be given unless there is some evidence that the plaintiff failed to use ordinary care to minimize damages (SJI 53.05).

5. APPEAL — JURY AWARDS — REMITTITUR.

The Court of Appeals reviews a trial court's decision to grant or deny remittitur for abuse of discretion; where a verdict is within the range of evidence produced at trial, the verdict will not be reversed as excessive and against the great weight of the evidence.

6. CIVIL RIGHTS — MICHIGAN HANDICAPPERS' CIVIL RIGHTS ACT — DIABETES.

A person who has diabetes which is controllable by the use of insulin is considered handicapped for purposes of the Michigan Handicappers' Civil Rights Act even though, due to the fact that it can be controlled, the diabetes is unrelated to his ability to perform the duty of his particular job or position (MCL 37.1103[b]; MSA 3.550[103][b]).

7. CIVIL RIGHTS — MICHIGAN HANDICAPPERS' CIVIL RIGHTS ACT — ATTORNEY FEES — DAMAGES.

Attorney fees are awarded under the Michigan Handicappers' Civil Rights Act as an element of damages only, not as an element of costs to be awarded by the court (MCL 37.1606[3]; MSA 3.550[606][3]).

*Brescoll & Associates, P.C.* (by *James A. Brescoll* and *Dennis P. Brescoll*), for plaintiff.

*Bodman, Longley & Dahling* (by *Lloyd C. Fell* and *David G. Chardavoyne*), and *Mary P. Sclawy*, of counsel, for defendant.

Before: CYNAR, P.J., and BEASLEY and R. E. ROBINSON,* JJ.

PER CURIAM. A Wayne County jury awarded plaintiff, Frederick H. Hines, Jr., $793,000 in damages, together with interest and costs, following trial on his discrimination suit under the Michigan Handicappers' Civil Rights Act.[1] Defendant's motions for new trial, judgment notwithstanding the verdict and remittitur were denied, and defendant now appeals as of right. Plaintiff cross-appeals as to one issue.

On April 19, 1976, plaintiff was hired by defendant, Grand Trunk Western Railroad Company, to work as a switchman. He had been found physi-

---

* Former circuit judge, sitting on the Court of Appeals by assignment.

[1] MCL 37.1101 *et seq.;* MSA 3.550(101) *et seq.*

cally qualified for hire on April 5, 1976, by defendant's chief medical officer. In 1977, plaintiff became a fireman and, after examination, qualified to become a yard engineer. He had begun studying for his last series of examinations to become a fully qualified engineer when he was disqualified and taken out of service as a fireman in November, 1979, pursuant to defendant's policy that any insulin-dependent diabetic cannot be in train service. The reason for the policy is that an insulin-dependent diabetic may go into hypoglycemic shock and, if so, be rendered incapable of performing his or her employment responsibilities.

Although plaintiff discovered he had diabetes in 1976, he was not placed on insulin until 1978 or early 1979. He was disqualified for train service by defendant following a November 9, 1979, physical examination in which plaintiff's blood sugar was determined to be high. Following his disqualification, plaintiff contacted defendant's personnel department and hired an attorney to try to get his job back. The personnel and labor relations departments apparently never attempted to accommodate plaintiff, and he has been unable to find a comparable job.

At trial, there was a lot of testimony about the risks associated with diabetes. Defendant's chief medical officer testified that a diabetic with very low blood sugar may go into hypoglycemic shock, while one with a very high level may go into a diabetic coma. The medical officer noted that all diabetics are different and that a person's present ability to do a given job is the criteria guiding a decision to discharge. Plaintiff, however, was automatically disqualified for taking insulin.

Defendant has a per se exclusion policy for all insulin-controlled diabetics from train service because they could lose consciousness. According to

some of the testimony, while it may be predicted when an insulin-dependent diabetic will have a reaction, a well-controlled diabetic with high blood sugar seldom loses consciousness. Plaintiff had episodes where he felt shaky, but he was in the habit of carrying sugar cubes or Lifesavers to control that feeling.

Dr. Rovner, who testified for plaintiff, stated that he was aware of the duties of a fireman or engineer and he believed, to a reasonable degree of medical certainty, that plaintiff could perform the duties of a locomotive fireman. Dr. Leach, a specialist in endocrinology and metabolism, testified at his deposition, which was read into the record, that a locomotive engineer should not take insulin. While he agreed with plaintiff's expert that an insulin deficiency will occur over several days and the person would be warned by signs and symptoms, he believed the consequences of a reaction to insulin would be devastating to the train's crew, passengers and bystanders. Following additional testimony, the jury found for plaintiff, and defendant appeals.

On appeal, defendant argues first that the trial court erred in excluding evidence of industry standards and federal regulations regarding the employment of insulin-dependent diabetics.

Plaintiff brought a motion in limine prior to trial to exclude the evidence of the recommended safety standards promulgated by the American Association of Railroads (AAR). Apparently, the standards state that a locomotive engineer must have no current diagnosis of diabetes which requires the use of insulin. Plaintiff testified that, in answers to interrogatories, defendant stated it did not know the names and addresses of other railroads that apply the AAR recommended safety standards. Plaintiff argued that defendant could

not show the standard was used industry-wide and, further, that the standard applied to locomotive engineers only and not to firemen such as plaintiff. Defendant's response was the deposition testimony of its chief medical officer, Dr. Gallant, that the standard is used industry-wide, and that this is true regardless of whether defendant knew of any other railroads applying it.

The trial judge was not satisfied that defendant had shown the recommended safety standard had been adopted industry-wide and, therefore, sustained plaintiff's objection to defendant's use of the standards because there was no foundation to show that the standard was used industry-wide. She did not comment on plaintiff's contention that the standard applied to locomotive engineers and not firemen.

Defendant argues that the evidence was relevant under MRE 402, because it tended to show the rational basis upon which defendant based its decision to disqualify plaintiff. This Court will not reverse a trial judge's decision as to the relevance of evidence absent a clear abuse of discretion.[2] While the issue here is a close one, we decline to find a clear abuse of discretion.[3]

In the within case, this issue concerns the relevance of association standards, where there is little testimony that such are used industry-wide, to show that an employer's decision to disqualify an employee was rationally based.[4] The AAR standard on the employability of insulin-dependent

[2] *Gallaway v Chrysler Corp*, 105 Mich App 1, 9; 306 NW2d 368 (1981), lv den 413 Mich 853 (1982); *Citizens National Bank of Cheboygan v Mayes*, 133 Mich App 808, 811; 350 NW2d 809 (1984); *People v Phillips*, 131 Mich App 486, 491; 346 NW2d 344 (1984).

[3] *People v Phillips, supra*, pp 491-492.

[4] See *Allen v Southeastern Michigan Transportation Authority*, 132 Mich App 533; 349 NW2d 204 (1984).

diabetic locomotive engineers certainly bears upon whether the employer's decision was rationally based. Thus, relevance is not a correct basis for refusing to admit such evidence. The problem, rather, is that defendant failed to lay a sufficient foundation. The interrogatory answer supplied by defendant failed to show that the standard in question was used by any other railroad.

Dr. Gallant, who was available to testify and who did testify at trial, had stated in his deposition that he is on the Medical Section Committee of Direction, AAR. He testified about the standard, but it is unclear whether he could have testified at trial as to whether the standard was used industry-wide. At least the trial judge was not convinced that his testimony could lay the requisite foundation; apparently, she instead believed he would simply "rest on his laurels" as a committee member and assert that the standards were in fact used industry-wide. Defense counsel failed to establish to the trial judge's satisfaction that the foundation could be laid.

We are reluctant to second guess the trial court and, consequently, do not find an abuse of discretion in the trial court's refusal to admit the evidence under these circumstances. While we believe that industry standards and governmental regulations are relevant in establishing that an employer's decision to disqualify a handicapped employee had a rational basis, we agree with the trial court that a better foundation must be laid to show that such standards are in use industry-wide than was done here.

With regard to the issue of governmental regulations, plaintiff moved in the motion in limine to exclude all reference to federal regulations prohibiting insulin-dependent diabetics from obtaining a

pilot's license[5] or from operating a commercial motor vehicle in interstate commerce.[6] The court granted the motion on the grounds that medical standards for truck drivers and airline cockpit crews were not probative for a factfinder dealing with firemen.

The trial judge was entitled to consider whether the jury would be confused by admission of evidence concerning airline cockpit crews and truck drivers in interstate commerce and was entitled to conclude that it would be confusing and a waste of time to permit a mini-trial about whether regulations for airline cockpit crews and truck drivers were similar to those for locomotive firemen such that they could provide a rational analogy for defendant's disqualification of plaintiff.

In considering the motion in limine, the trial judge thoroughly considered the American Diabetic Association (ADA) standards and, in contrast to her ruling on industry standards, allowed their introduction in evidence because she believed doctors frequently rely upon such standards. Also, defendant's expert witness, Dr. Leach, had testified about his reliance on the ADA standards in coming to the conclusion that plaintiff should not work as a locomotive fireman or engineer, which testimony tended to support the trial judge's conclusion on this subject. Although the question is close, we decline to find that the trial judge abused her discretion in allowing the ADA standards to be admitted in evidence.

Second, defendant argues that the trial court erred when it instructed the jury that a common carrier such as Grand Trunk must always make a determination of the ability of each individual handicapped employee to perform the job. Defen-

---

[5] 14 CFR 67.13(f)(1), 67.15(f)(1), 67.17(f)(1).

[6] 49 CFR 391.41(b)(3).

dant objected to this instruction, which read as follows:

> Under the law an employer may not categorically exclude or dismiss for employment any group or class of applicants who have a particular medical condition, but instead must consider on an individual basis the present ability of each applicant or employee to perform the particular job.
>
> If you find that Plaintiff was presently able to perform his job as fireman, but that the Defendant categorically excluded him from employment because of an insulin dependence, then you must find for the Plaintiff.

Defendant's objection was apparently made on the grounds that the instruction was repetitive. Defendant now claims the instruction was erroneous because, under the rule of *Allen v Southeastern Michigan Transportation Authority,*[7] a common carrier may rely upon classifications where it has a rational basis to relate such to the passengers' safety. Thus, employers may disqualify by categories where the employer is engaged in an activity affecting public safety, i.e., the employer is a common carrier. Thus, in this case, defendant objected to the instruction, but did so on grounds different than the ones pressed upon appeal. Plaintiff is correct that defendant actually conceded to the "individual basis" instruction at trial. Further, defendant did not submit a "rational basis" instruction, orally or in writing. Under these circumstances, defendant is not precluded from raising this argument on appeal.

Nevertheless, in any event, the instruction given was derived from language in the Michigan Handicappers' Civil Rights Act, which, at the time, referred to an individual determination. When

---

[7] *Allen, supra.*

plaintiff was disqualified in November, 1979, MCL 37.1207; MSA 3.550(207), now repealed by 1980 PA 478, § 102(2) stated:

> Nothing in this article shall be interpreted to exempt a person from the obligation to accommodate an employee or applicant with a handicap for employment, unless the person demonstrates that the accommodation would impose an undue hardship in the conduct of the business.

When the act was revised by 1980 PA 478, § 102(2), MCL 37.1102(2); MSA 3.550(102)(2) provided:

> (2) A person shall accommodate a handicapper for purposes of employment, public accommodation, public service, education, or housing unless the person demonstrates that the accommodation would impose an undue hardship.

The instruction was, therefore, consonant with Michigan law at the time. We see no error in the instruction as it was given.

Third, defendant argues that the jury verdict was excessive. Defendant attempted to argue in closing that plaintiff failed to mitigate his damages. The trial judge precluded the argument because defendant never pled or proved failure to mitigate and no instruction on mitigation was requested. Now, defendant argues that there is a standard jury instruction on mitigation, SJI 53.05, and that, under the mandate of GCR 1963, 516.6(2) that standard jury instructions shall be given where applicable and where they accurately state the law, it should have been given.

In tort and contract actions, it is the defendant's burden to show that the plaintiff failed to mitigate

damages.[8] While defendant failed to plead and prove the failure of mitigation issue, plaintiff elicited testimony about plaintiff's attempts to mitigate. Defendant failed entirely in its burden to show failure to mitigate. In addition, there is a cautionary note in the instruction which indicates that the instruction should not be given unless there is some evidence that the plaintiff failed to use ordinary care to minimize damages. Here, there was no such evidence that plaintiff failed in his duty; there was only evidence that plaintiff did comply with the duty to mitigate.

This Court reviews a trial judge's decision to grant or deny remittitur for abuse of discretion.[9] The remittitur power should be exercised with restraint. Where a verdict is within the range of evidence produced at trial, this Court will not reverse it as excessive and against the great weight of the evidence.[10] In this case, the amount awarded, $793,000, falls within the range of the evidence presented. We see no error on the part of the trial judge in declining to grant remittitur.

Defendant's fourth argument on appeal is that, under the language of the Michigan Handicappers' Civil Rights Act, plaintiff is not handicapped. In *Wardlow v Great Lakes Express Co,*[11] this Court squarely addressed the issue defendant raises

[8] *Valentino v Oakland County Sheriff,* 134 Mich App 197, 213; 351 NW2d 271 (1984); *Higgins v Kenneth R Lawrence, DPM, PC,* 107 Mich App 178, 181; 309 NW2d 194 (1981).

[9] *Gillispie v Bd of Tenant Affairs of the Detroit Housing Comm,* 122 Mich App 699, 704; 332 NW2d 474 (1983), lv den 417 Mich 1100.37 (1983); *Stevens v Edward C Levy Co,* 376 Mich 1, 4; 135 NW2d 414 (1965).

[10] *Kovacs v Chesapeake & Ohio R Co,* 134 Mich App 514, 542; 351 NW2d 581 (1984), citing *Decker v Norfolk & Western R Co,* 81 Mich App 647, 658-661; 265 NW2d 785 (1978), lv den 403 Mich 845 (1978); *Precopio v City of Detroit,* 415 Mich 457, 465, n 10; 330 NW2d 802 (1982).

[11] 128 Mich App 54, 59; 339 NW2d 670 (1983), lv den 419 Mich 871 (1984).

herein. According to MCL 37.1103(b); MSA
3.550(103)(b), a handicap is defined as follows:

> (b) "Handicap" means a determinable physical
> or mental characteristic of an individual or a
> history of the characteristic which may result
> from disease, injury, congenital condition of birth,
> or functional disorder which characteristic:
> (i) For purposes of article 2, is unrelated to the
> individual's ability to perform the duties of a
> particular job or position, or is unrelated to the
> individual's qualifications for employment or pro-
> motion.

In *Wardlow,* this Court rejected making a literal
reading of the act, as defendant urges herein.
Under *Wardlow,* plaintiff is a protected individual
under the act. He has a disease, diabetes, which
could be related to his ability to perform the job of
a fireman were it not controlled by his use of
insulin. In that sense, it is unrelated to his ability
to perform the duty of a particular job or position,
as the act requires. Defendant's argument lacks
merit.

On cross-appeal, plaintiff argues that the trial
court erred by not taxing attorney fees on defen-
dant under the Michigan Handicappers' Civil
Rights Act. After the jury verdict in this case,
plaintiff moved for attorney fees under MCL
37.1606(3); MSA 3.550(606)(3), which was added to
the Michigan Handicappers' Civil Rights Act by
1980 PA 478, effective January 20, 1981:

> (3) As used in subsection (1), "damages" means
> damages for injury or loss caused by each violation
> of this act, including reasonable attorneys' fees.

Defendant objected on two grounds: (1) that
MCL 37.1606(3); MSA 3.550(606)(3) permits recov-

ery of attorney fees as an element of damages only, not as costs to be taxed by the court, and (2) that the statute does not apply to plaintiff's claim because it accrued before the section became effective. The trial judge correctly ruled that the plain language of the statute provides that attorney fees are an element of damages, not an element of costs to be awarded by the court, as in the Michigan Civil Rights Act.[12] The trial court properly declined to consider an award of attorney fees as an element of costs. The judgment of the trial court is affirmed.

Affirmed.

---

[12] See MCL 37.2802; MSA 3.548(802).