CRITTENDEN v CHRYSLER CORPORATION

Docket No. 103880. Submitted February 15, 1989, at Detroit. Decided March 31, 1989.

Hewitt Crittenden brought in Wayne Circuit Court an action pursuant to the Handicappers' Civil Rights Act against Chrysler Corporation, alleging that Chrysler refused to classify him as available for reemployment in his old job classification on the basis that his hypertensive condition rendered him unfit for such employment and that, as a result, he was forced to accept early retirement. Chrysler moved for summary disposition on the basis that a company doctor determined that plaintiff, because of his hypertension, could only do work which involved no climbing, minimal lifting and minimal stooping, squatting, bending or twisting and thus plaintiff's hypertensive condition was related to his ability to perform available work. By his own deposition testimony and by his doctor's affidavit, plaintiff asserted that his hypertension was controlled and it would not affect his ability to perform the available work. The trial court, John H. Hausner, J., granted defendant's motion for summary disposition on the basis that plaintiff had been denied reinstatement because there had been a determination that his handicap affected his ability to perform the job and, accordingly, the Handicappers' Civil Rights Act did not apply. Plaintiff appealed.

The Court of Appeals *held:*

It was error mandating reversal for the trial court to grant summary disposition, since the pleadings raise a question of fact with respect to whether plaintiff's hypertensive condition rendered him unable to perform the available work. The fact that defendant apparently refused to reinstate plaintiff on the basis of medical advice indicating that plaintiff lacked the ability to do the available work does not operate to deny plaintiff the right to a factual determination of whether he would have been able to perform the available work.

Reversed and remanded.

REFERENCES

Am Jur 2d, Summary Judgment § 27.

Construction and effect of state legislation forbidding job discrimination on account of physical handicap. 90 ALR3d 393.

CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — FAILURE TO
    EMPLOY — SUMMARY DISPOSITION.

It is error of a trial judge to grant summary disposition with
respect to a Handicapper's Civil Rights Act claim which alleges
employment discrimination on the basis of an employee's hy-
pertensive condition where the employee's complaint is sup-
ported by deposition testimony and affidavits to the effect that
the hypertensive condition was controlled and would not affect
the employee's ability to work; the fact that the employer in
denying the employee employment in a particular job relied
upon the medical opinion of a company doctor that the em-
ployee was unable to perform the work will not defeat the
employee's right to have a jury determine whether the denial
of employment under such circumstances was the product of
unlawful discrimination (MCL 37.1103[b][i], 37.1202[1]; MSA
3.550[103][b]; 3.550[202][1]).

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by
*Patrick Burkett*), for plaintiff.

*Dickinson, Wright, Moon, VanDusen & Freeman*
(by *Robert E. Kinchen*), for defendant.

Before: SAWYER, P.J., and MAHER and BRENNAN,
JJ.

PER CURIAM. Plaintiff appeals as of right from
the September 25, 1987, order of the Wayne Cir-
cuit Court which granted defendant's motion for
summary disposition and dismissed plaintiff's
claim for handicap discrimination. We reverse.

During plaintiff's employ with defendant, which
began in 1953, he was involved with the United
Auto Workers, serving as a union steward and
committeeman for several years. In October of
1974, plaintiff was granted a leave of absence to
work full-time with the International UAW. His
position was funded through a CETA program and
entailed job training and placement services for
disadvantaged workers. In February of 1982, he

was laid off from that position because cutbacks in the federal budget eliminated the CETA grant.

After his layoff, plaintiff sought reemployment with defendant pursuant to a provision in the International Collective Bargaining Agreement which provided that "[u]pon return from any such leave of absence, the employee shall be re-employed at work generally similar to that which he did last prior to the leave of absence and with seniority accumulated throughout his leave of absence." Prior to his leave of absence, plaintiff worked at defendant's Hamtramck plant. However, that plant was closed in January of 1980, while plaintiff was still on leave with the union. At the time of the closing, a merger of sorts occurred between the employees of the Jefferson assembly plant and those of the Hamtramck plant, i.e., high seniority workers at Hamtramck were sent to work at Jefferson and the rest were laid off. A Memorandum of Understanding on Plant Closures was executed by defendant and the union which defined the rights of the laid-off employees. The memorandum provided in pertinent part:

> WHEREAS, the Corporation and the Union wish to provide work opportunity to employees laid off as a result of the phasing-out of operations prior to a plant closing and those laid off as the result of the closing itself; and
>
> WHEREAS, due to the plant closing such laid off employees have no recall rights to any Corporation plant.
>
> *   *   *
>
> Employees laid off from a plant the Corporation has announced its intention to close and who are not expected to be recalled due to the closing will be placed on a list in the order of their seniority at the closed plant. As work they are qualified to do becomes available at other plants of the Corpora-

tion in the United States and Canada as a result of attritional openings, employees on the list will be eligible for placement in such jobs insofar as reasonably practicable in the order of their seniority at the closed plant.

Such employees will be placed at the new plant with the seniority they had at the closed plant, and their seniority at all other plants shall terminate.

An employee placed pursuant to this Paragraph II will be placed only when his seniority is greater than the seniority of a laid off employee of the plant in which the attritional opening occurs and who otherwise would be recalled to the attritional opening.

*  *  *

The Corporation shall not incur any liability for claimed violations or errors in administration of this Memorandum, and employees will not accumulate seniority or other rights by reason of this Memorandum.

Because plaintiff was still employed with the union in 1980, he did not participate in the selection process which occurred at that time.

On March 1, 1982, plaintiff reported to the Jefferson plant and indicated his availability to work to John Kotes, an employee of defendant who was charged with caring for the records of the Hamtramck plant. Plaintiff requested that he be reinstated to a job suitable to his classification and seniority. Kotes allegedly placed him on the active rolls to reactivate benefits but then almost immediately listed him as a Code 31 layoff (i.e., no work available). Kotes told plaintiff that he would be eligible for supplemental employment benefits until such time that a job could be located for him. Plaintiff was purportedly never told at this time that reemployment was conditioned upon passing a physical examination.

In April of 1982, plaintiff contacted Kotes to again inquire about the possibility of employment. He was told that nothing was yet available. In May of 1982, plaintiff visited Kotes and asked about returning to work. Kotes referred him to a company physician, Dr. Lorenzo, for a physical examination.

During the examination, Dr. Lorenzo questioned plaintiff about his medical history and a nurse checked his blood pressure and other vital signs. Plaintiff indicated that he had hypertension which was being controlled by medication. The entire examination lasted only ten to fifteen minutes.

On the basis of the information obtained at the physical examination, plaintiff was placed on "PDX 40-51-60" medical restriction status, which restricted the following activities:

40. No climbing. Permits ground level or platform work and ordinary stair climbing.

* * *

51. Lifting or carrying 20 lbs. or less.

* * *

60. Minimal stooping, squatting, bending, or twisting of body.

Dr. Lorenzo assigned the above PDX codes to plaintiff on a temporary basis due to his high blood pressure and taking of medication.

Because of the physical restrictions placed on plaintiff, he was placed on indefinite layoff and became ineligible for employment at the Jefferson plant. On March 31, 1983, at age 59, plaintiff was forced to accept early retirement from defendant.

On March 27, 1983, plaintiff instituted this suit against defendant, alleging age and handicap discrimination for refusing to reemploy him after he returned from the leave of absence. Subsequent to

filing its answer wherein it denied the discrimination allegations, defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and (10). Defendant asserted that plaintiff's age discrimination claim should be dismissed because there was no genuine issue of material fact and it was entitled to judgment as a matter of law. As to the handicap discrimination claim, defendant argued that plaintiff had failed to state a claim upon which relief could be granted because his alleged handicap did not fall within the parameters of the Handicappers' Civil Rights Act, MCL 37.1101 *et seq.;* MSA 3.550(101) *et seq.* The trial court granted defendant's motion in full, stating:

"So, I agree, as a matter of law, on the facts before me, the C-10 motion, that it was proper for them to put him on layoff, and when he came back from layoff, there was no job open to him at that time.

"There's no showing whatsoever that people younger than him who had been off for an extended period of time were not required to go get a medical examination. There's just no showing of that, that he was treated differently. And there's no showing that their reason for doing it wasn't a valid legitimate business reason.

"And as to the handicapped one, the handicap he had affected his ability to do the job, and that's where the handicapper's statute doesn't apply.

"I am going to grant it."

An order granting defendant's summary disposition motion and dismissing plaintiff's discrimination claims was entered on September 25, 1987. Plaintiff appeals from the order as of right, challenging only the court's dismissal of his handicap discrimination claim.

Plaintiff's handicap discrimination claim was brought under subsection 1 of § 202 of the HCRA

MCL 37.1202(1); MSA 3.550(202)(1), which provides, in pertinent part, that an employer shall not:

> (a) Fail or refuse to hire, recruit, or promote an individual because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position.
>
> * * *
>
> (c) Limit, segregate, or classify an employee or applicant for employment in a way which deprives or tends to deprive an individual of employment opportunities or otherwise adversely affects the status of an employee because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position.
>
> (d) Fail or refuse to hire, recruit, or promote an individual on the basis of physical or mental examinations that are not directly related to the requirements of the specific job.

"Handicap," for purposes of the act and as applied in this case, is defined as "a determinable physical or mental characteristic . . . which may result from disease, injury, congenital condition of birth, . . . which . . . is unrelated to the individual's ability to perform the duties of a particular job or position, or is unrelated to the individual's qualifications for employment or promotion." MCL 37.1103(b)(i); MSA 3.550(103)(b)(i).

An employer is guilty of violating § 202(1)(a) of the HCRA (i.e., failure or refusal to hire, recruit, or promote a handicapped individual) upon the occurrence of the following conditions: First, the employer's failure or refusal to hire, recruit, or promote must be "because of a handicap," and, second, the handicap must be unrelated to the individual's ability to perform the duties of the job or position. *Bogue v Teledyne Continental Motors,*

136 Mich App 374, 377; 356 NW2d 25 (1984), lv den 421 Mich 862 (1985). Once the plaintiff presents evidence that he or she is "handicapped" and that the handicap does not affect his or her ability to perform the duties of a particular job, the burden of proof shifts to the defendant to show a legitimate, nondiscriminatory reason for its rejection of the plaintiff. *Carden v General Motors Corp,* 156 Mich App 202, 211; 401 NW2d 273 (1986), lv den 428 Mich 891 (1987). If the defendant makes such a showing, the burden of proof shifts back to the plaintiff to show that the defendant's reason was false or a mere pretext. *Id.* However, the plaintiff is not required to show that the defendant was motivated solely by a discriminatory intent; it is enough to show that the discrimination was a determining factor in the defendant's conduct. Whether a defendant's decision was motivated by a legitimate business judgment or a prohibited discriminatory bias is a question which should be left for resolution by the trier of fact. *Rancour v The Detroit Edison Co,* 150 Mich App 276, 290; 388 NW2d 336 (1986), lv den 428 Mich 860 (1987).

The legislative intent in enacting the HCRA was to mandate the employment of the handicapped to the fullest extent reasonably possible. *Allen v Southeastern Michigan Transportation Authority,* 132 Mich App 533, 537-538; 349 NW2d 204 (1984). To this end, the act should be liberally construed by the courts. *Rancour, supra,* p 285.

A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim. *Dumas v Auto Club Ins Ass'n,* 168 Mich App 619, 626; 425 NW2d 480 (1988). The court must determine, giving the benefit of every reasonable doubt to the nonmoving party, whether a record might be developed which would leave

open an issue upon which reasonable minds could differ. *Id.* Before summary disposition may be granted, the court must be satisfied that it is impossible for the claim to be supported by evidence at trial. *Peterfish v Frantz,* 168 Mich App 43, 48-49; 424 NW2d 25 (1988). The courts are liberal in finding the existence of a genuine issue of material fact. *St Paul Fire & Marine Ins Co v Quintana,* 165 Mich App 719, 722; 419 NW2d 60 (1988).

Applying the above standards to the instant case, we hold that the trial court erred in granting summary disposition to defendant on plaintiff's handicap discrimination claim. Plaintiff presented evidence, through his deposition testimony and the affidavit of his personal physician, that his hypertension was being controlled by medication and would not affect his working ability. The doctor's affidavit specifically stated that plaintiff was physically capable of performing activities such as climbing, lifting more than twenty pounds, stooping, squatting, bending, or twisting. Assuming those proofs are true—which we must do in determining the propriety of summary disposition under MCR 2.116(C)(10)—plaintiff's handicap would be unrelated to his ability to perform the duties of the job or position in question. See *Hines v Grand Trunk W R Co,* 151 Mich App 585, 596; 391 NW2d 750 (1985). Hence, there existed a genuine issue of material fact whether defendant violated § 202(1)(a) of the HCRA.

We cannot accept defendant's assertion that the trial court properly considered only the evidence before defendant at the time it made its decision, i.e., the results of the physical examination performed on plaintiff by defendant's staff physician. Although the physician's report lends credence to defendant's claim that it acted nondiscriminato-

rily, it does not absolutely foreclose a violation of the HCRA. Plaintiff alleges that the report had an inadequate basis in fact and that defendant was not justified in relying on it. If true, this could show that a discriminatory purpose was a determining, albeit not the sole, factor in motivating defendant. Were we to accept defendant's argument, we would simply be inviting fraud and collusion among employers and examining physicians. Certainly, this would not further the HCRA's goal of ensuring employment opportunities for handicapped individuals to the fullest extent reasonably possible. *Allen, supra,* pp 537-538.

Because of our ruling on this issue, we need not address plaintiff's alternative claim that defendant had a duty under the terms of the collective bargaining agreement to accommodate any physical limitations he might have.

As to the federal preemption claim asserted by defendant for the first time in its appellate brief, we decline to review it. This Court will not address issues which were not decided below unless it is one of law for which all the necessary facts were presented. *Providence Hosp v Nat'l Labor Union Health & Welfare Fund,* 162 Mich App 191, 194-195; 412 NW2d 690 (1987). Such is not the case here. However, defendant would be free to raise the preemption claim when this case returns to the trial court on remand.

Reversed and remanded for further proceedings on plaintiff's handicap discrimination claim. We do not retain jurisdiction.