**Shirley MAYBERRY, Plaintiff,**

v.

**Cheryl C. VON VALTIER and Rochester Family Practice Associates, Defendants.**

**No. 93–CV–71383–DT.**

United States District Court, E.D. Michigan, S.D.

Feb. 8, 1994.

---

Sidney Kraizman, Detroit, MI, for plaintiff.

Stephen D. McGraw, Thomas R. Williams, Christopher A. Cornwall, Kerr, Russell and Weber, Detroit, MI, for defendant Cheryl C. Von Valtier.

Charles E. Murphy, Cox & Hodgman, Troy, MI, for defendant Rochester Family Practice Associates.

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT VON VALTIER'S MOTION FOR SUMMARY JUDGMENT

WOODS, District Judge.

This matter having come before the Court on defendant Cheryl C. Von Valtier's Motion for Summary Judgment;

The Court having reviewed the pleadings submitted herein, and being otherwise fully informed in the matter;

The Court finds that defendant's Motion shall be, and hereby is, DENIED.

Defendant, Cheryl C. Von Valtier, is a physician licensed to practice medicine in the State of Michigan. Plaintiff, Shirley Mayberry, is a 67 year old deaf woman. Since 1987, Dr. Von Valtier has treated Ms. Mayberry as her family physician. Ms. Mayberry testified that she was able to lipread until she completely lost her hearing in 1990, and that she is able to understand simple notes. Ms. Mayberry and Dr. Von Valtier communicated during physical examinations by passing notes back and forth, or by using a signor. The signor was often one of Ms. Mayberry's children, and on three occasions a professional interpreter had been used. Dr. Von Valtier testified that visits with Ms. Mayberry took twice as long with an interpreter than when they passed notes, but that she did not mind spending the extra time.

On March 15, 1991, Ms. Mayberry brought her daughter Claudia Langston to her appointment with Dr. Von Valtier. Ms. Langston told Dr. Von Valtier that her mother's hearing had gotten progressively worse. During that visit, Dr. Von Valtier discovered that the back pain Ms. Mayberry had earlier complained of was higher than she had originally understood. Dr. Von Valtier wrote the following note on her chart: "[Ms. Mayberry] [s]tates pain has not moved, but this is higher than I had understood her to say. Probably due to poor communication." Ms. Langston swears in her affidavit that Dr. Von Valtier told her that an interpreter made

communication with Ms. Mayberry clearer and easier than writing notes. In addition, Dr. Von Valtier told her that she wanted Ms. Mayberry to have an interpreter when she was seen at her medical office.

On three occasions, Ms. Mayberry had an interpreter from Deaf, Hearing and Speech Services—Senior Citizens present during appointments with Dr. Von Valtier. On two of those occasions, once in 1989 and once in 1990, Dr. Von Valtier did not have to pay for the interpreter. On the third occasion, December 18, 1992, Ms. Mayberry was due to have a general examination, and she requested an interpreter because she felt she needed one. Dr. Von Valtier's office consented to pay for the interpreter's services pursuant to its duty under the Americans with Disabilities Act. Dr. Von Valtier wrote to Ms. Mayberry on January 7, 1993, summarizing the results of her examination.

Dr. Von Valtier was billed $28.00 by Monalee Ferrero for her interpreting services. Dr. Von Valtier paid the bill, and sent the following letter to Ms. Ferrero.

> Enclosed is payment for your services to Shirley Mayberry in this office 12/18/92. The Medicare payment for Mrs. Mayberry's office visit has been received, and I would now like to explain why I won't be able to utilize your services in the future, or indeed why I really can't afford to take care of Mrs. Mayberry at all.
>
> My regular fee for a 15 minute office visit is $40.00. I spent about 45 minutes with Mrs. Mayberry on December 12, 1992, for this I was paid $37.17 by Medicare and (hopefully) $9.29 by Mrs. Mayberry. My office overhead expense rate is a rather steady 70% of my gross receipts, which means that for that 45 minutes I was able to "pocket" $13.94, that is, until I paid your bill for $28.00.
>
> I certainly hope that the Federal Government does not further slash this outrageous profit margin.

A copy of this letter was also sent to Ms. Mayberry.

After Ms. Mayberry received the letter addressed to Ms. Ferrero, she became angry and called Dr. Von Valtier's office to ask for

her records. Ms. Mayberry admits that she did not ask Dr. Von Valtier what she intended by the letter. Ms. Mayberry interpreted the letter to mean that Dr. Von Valtier would not hire an interpreter for her again, and that she had been discharged as a patient. (Mayberry deposition, p. 120). At her deposition, Dr. Von Valtier explained that the letter was poorly written and ambiguous, and it was not her intention to discharge Ms. Mayberry from her practice, nor did she intend to refuse to pay for an interpreter in the future. Dr. Von Valtier claims to have a specific protocol for discharging patients, and that protocol was not initiated in this case. Dr. Von Valtier sums up the purpose of her letter as a protest of the Americans with Disabilities Act, saying:

> I felt that although this ADA is the law of the land, and I have to obey it, I don't think it's fair. I wanted to protest it. I feel that I have a right to protest it even though I have to obey it. And this was one protest that I could make because of the fact that for six years, Shirley Mayberry and I successfully communicated with each other with pencil and paper. (Von Valtier Deposition, p. 58–59).

Plaintiff's complaint alleges that she has been denied future treatment by defendant because she is deaf. Plaintiff alleges that defendant's actions in refusing to provide interpreter services in the future, and in terminating her medical care, amounts to discrimination in violation of the Americans with Disabilities Act of 1990 (ADA), Section 504 of the Federal Rehabilitation Act of 1973, and the Michigan Handicappers' Civil Rights Act.

Plaintiff seeks an injunction against defendant, ordering her to provide medical treatment to plaintiff, and to pay for an interpreter during medical appointments. It is requested that the injunction also order defendant to promulgate policies and procedures for providing interpreters to ensure effective communication for plaintiff and other deaf patients. Plaintiff additionally seeks an order that defendant be required to notify plaintiff and other deaf patients of their right to auxiliary aids and services. Plaintiff further seeks recovery for her emotional suffer-

ing in the amount of $10,000, along with attorney fees and court costs.

Pursuant to Fed.R.Civ.Proc. 56(c) a motion for summary judgment is to be granted only if the evidence indicates that no genuine issue of material fact exists. In order to avoid summary judgment, the opposing party must have set out sufficient evidence in the record to allow a reasonable jury to find for him at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Electric Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The sufficiency of the evidence is to be tested against the substantive standard of proof that would control at trial. *Anderson,* 477 U.S. 242, 106 S.Ct. 2505. The moving party has the burden of showing that there is an absence of evidence to support the non-moving party's case. *Celotex v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. In disposing of a motion for summary judgment, this Court must consider the evidence in the light most favorable to the non-moving party, but may weigh competing inferences for their persuasiveness. *Matsushita,* 475 U.S. 574, 106 S.Ct. 1348.

**A. Americans with Disabilities Act (ADA)**

Under the ADA, the general rule prohibiting discrimination by public accommodations states that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). A place of public accommodation is defined to include the professional office of a health care provider. 42 U.S.C. § 12181(7)(F). Defendant Dr. Von

Valtier's medical office is therefore a place of public accommodation for purposes of the ADA. The term disability means "a physical or mental impairment that substantially limits one or more of the major life activities of such individual...." It is undisputed that plaintiff's deafness is a disability under the ADA.

The ADA defines discrimination as including a failure to take necessary steps to ensure that no individual with a disability is denied services because of the absence of auxiliary aids and services. The Department of Justice has promulgated regulations to implement the ADA, and states in its commentary on the final regulations:

> The auxiliary aid requirement is a flexible one. A public accommodation can choose among various alternatives as long as the result is effective communication.

Fed.Reg., Vol 56, No. 144, Page 35566 (July 26, 1991); 28 CFR 36.303, App. B. The regulations include examples of auxiliary aids and services required to be furnished where necessary to ensure effective communication. The examples given for persons with hearing losses include qualified interpreters and notetakers. 28 CFR § 36.303(b)(1). The effective communication requirement of the ADA has been interpreted such that Congress expects places of public accommodation to consult with disabled persons when it comes to auxiliary aids for effective communication, but Congress does not mandate primary consideration of their expressed choices. 28 CFR 36.303, App. B.

The construction provision of the ADA states that the standards of title V of the Rehabilitation Act of 1973, and its regulations, are to apply, except where the ADA has explicitly adopted a different standard. 42 U.S.C. § 12201(a). In order to make out a *prima facie* case under title III of the ADA, the plaintiff must prove (1) that she has a disability; (2) that defendant's office is a place of public accommodation; and (3) that she was discriminated against by being refused full and equal enjoyment of medical treatment because of her disability. Defendant maintains that intent to discriminate is a fourth element of plaintiff's *prima facie* case, relying on traditional disparate-treat-ment/disparate-impact and burden-shifting analyses used in discrimination cases.

Federal courts have struggled with the issue of whether intent to discriminate is an element to stating a *prima facie* case under the Rehabilitation Act. This Court will look to the cases interpreting the Rehabilitation Act for guidance, as there are no reported cases analyzing the requirements for sustaining a claim under the effective communication by a public accommodation provisions of the ADA. The Supreme Court has looked to the objective behind enactment of the Rehabilitation Act, concluding that "[d]iscrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." *Alexander v. Choate*, 469 U.S. 287, 295, 105 S.Ct. 712, 717, 83 L.Ed.2d 661 (1985). *Alexander* involved a change in Medicaid policy whereby the number of annual inpatient hospital days covered was to be reduced from 20 to 14 days. A class of Medicaid recipients alleged that the reduction would have a disproportionate effect on the handicapped, and therefore violated § 504 of the Rehabilitation Act. The Court found that there were two competing considerations in the context of the discriminatory impact a program or action has on the handicapped. On the one hand is the need to give effect to the Act's objectives of preventing discrimination, and on the other hand is the desire to keep § 504 within manageable bounds. *Id.* at 299, 105 S.Ct. at 719. That is, not every action that touches the handicapped should be subjected to analysis under the Act. The Court refused to hold that all showings of disparate impact on the handicapped constitute *prima facie* cases under § 504, nor would it hold that proof of discriminatory intent was necessary in every case. *Id.* *Alexander* has been interpreted by Courts of Appeals to stand for the proposition that plaintiffs need not establish an intent to discriminate in order to prevail on a disparate impact case under § 504. See, *Nathanson v. Medical College of Pennsylvania*, 926 F.2d 1368, 1384 (3rd Cir.1991).

■ A disparate impact case is one in which a facially neutral practice impacts

more harshly on one group of people than on others. For example, if defendant Von Valtier had announced a policy not to hire sign language interpreters for any patient, the impact would obviously be more profound on deaf patients. Such a policy, however, is not facially neutral in the same manner as the policy to reduce the number of annual inpatient hospital days that state Medicaid would pay for, which was the issue in *Alexander v. Choate*. The case presently before the Court does not involve a disparate impact, as plaintiff alleges that defendant specifically declined to provide *her* with an interpreter because she was disabled. Even though the Supreme Court addressed the issue of intent in a case where the discrimination complained of was in the form of a policy's impact rather than specific treatment, other courts have come to the same conclusion.

The Tenth Circuit Court of Appeals discussed the issue of intent and the Rehabilitation Act in the case of *Pushkin v. Regents of University of Colorado*, 658 F.2d 1372 (10th Cir.1981). The court refused to require that plaintiff prove discriminatory intent in a case where the handicapped plaintiff was denied admittance to a psychiatric residency program. The court held that plaintiff's claim must "stand or fall according to the principles enunciated" in § 504 of the Act. *Id.* at 1384. The court was not persuaded by defendant's argument that plaintiff's Rehabilitation Act claim should be subjected to an equal protection clause analysis, which requires proof of invidious discrimination. Nor would the court apply the traditional burden-shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), for determining whether an individual has been subjected to "disparate treatment" because of his or her protected status. *Pushkin*, 658 F.2d at 1384–85. The court concluded that § 504 of the Rehabilitation Act does not contemplate a disparate treatment or disparate impact analysis. *Id.* at 1385. Instead, the court used the statutory language of § 504 as a starting point to modify the *Burdine* burden-shifting analysis for handicap discrimination cases brought pursuant to the Rehabilitation Act. Under this new model, a plaintiff must establish a *prima facie* case by showing that he or she was an otherwise qualified handicapped person, apart from his or her handicap, and was rejected under circumstances which gave rise to the inference that such rejection was based solely on his or her handicap. *Id.* at 1387. The burden then shifts to defendant to prove that plaintiff was not an otherwise qualified handicapped person, or that plaintiff's rejection was for reasons other than his or her handicap. *Id.* At this point the burden shifts back to plaintiff to rebut defendant's stated reasons as pretextual. *Id.* The Sixth Circuit adopted the *Pushkin* analysis in the case of *Jasany v. United States Postal Service*, 755 F.2d 1244, 1249–50 n. 5 (6th Cir.1985) (applied modified burden-shifting test in case in which plaintiff alleged handicap discrimination in violation of § 504 in employment context).

The Second Circuit Court of Appeals found that the deaf parents of public school students had a cause of action under the Rehabilitation Act because they were denied effective communication at school functions related to their children's education. The parents were handicapped, the school district received federal financial assistance, and the parents were denied the opportunity to participate in school-initiated activities concerning their children's education by reason of their handicap. The court found that the parents were "otherwise qualified" to participate in the activities, and that the parents had stated a *prima facie* case of discrimination under the Rehabilitation Act. Intent to discriminate was not a separate element of stating a *prima facie* case. *Rothschild v. Grottenthaler*, 907 F.2d 286, 290 (2nd Cir. 1990). The court then shifted the burden to defendant to "present evidence to rebut the inference of illegality." *Id.* The District Court for the Western District of Michigan has also held that proof of intentional discrimination is not necessary in order to sustain a case under the Rehabilitation Act. *Sanders by Sanders v. Marquette Public Schools*, 561 F.Supp. 1361, 1372 (W.D.Mich. 1983).

In *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), a woman with a hearing disability was denied admission to a nursing program because her handicap made it impossible for her to participate in the normal clinical training, or to care for patients. The Supreme Court held that the College did not violate § 504 of the Rehabilitation Act. The College was permitted to take into account the applicant's physical restrictions, and was not required to make major adjustments to its nursing program, especially when that would entail lowering the standards of the program. The Court did not inquire into the College's intent in refusing the applicant's admission into the nursing program. The Court did, however, discuss a situation where a refusal to modify an existing program might become unreasonable and discriminatory: "[i]t is possible to envision situations where an insistence on continuing past requirements and practices might arbitrarily deprive genuinely qualified handicapped persons of the opportunity to participate in a covered program." *Southeastern Community College v. Davis,* 442 U.S. 397, 412, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980 (1979).

■ One of the stated purposes of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Congress specifically found that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion [and] the discriminatory effects of ... communication barriers...." 42 U.S.C. § 12101(a)(5). Given that statement, Congress appears to have intended the ADA to address the discriminatory effects of benign actions or inaction, as well as intentional discrimination. Based on the cases analyzing alleged violations of § 504, the Court concludes that the Rehabilitation Act does not require a plaintiff to prove discriminatory intent in order to make out a *prima facie* case of handicap discrimination. The Court will apply the modified burden-shifting analysis developed in cases under the Rehabilitation Act to the ADA.

■ In order to set forth a *prima facie* case under title III of the ADA, plaintiff must prove that she has a disability, that defendant's office is a place of public accommodation, and that she was denied full and equal medical treatment because of her disability. Plaintiff must additionally show that she was denied treatment under circumstances which give rise to the inference that such denial was based solely on her handicap. If plaintiff succeeds in stating a *prima facie* case, the burden shifts to defendant to prove either that plaintiff was not denied medical treatment, or that such denial was not unlawful. The burden then shifts back to plaintiff to rebut defendant's reasons as pretext for unlawful discrimination.

■ In her attempt to make out a *prima facie* case under title III of the ADA, plaintiff has clearly proven that she has a disability and that defendant's office is a place of public accommodation. Plaintiff has also produced evidence giving rise to an inference that she was unlawfully discriminated against by being refused full and equal enjoyment of medical treatment because of her disability. As proof that defendant intended to refuse to hire an interpreter in the future, and to discharge plaintiff, plaintiff submits defendant's own words in the February 22, 1993 letter to Ms. Ferrero. In addition, plaintiff provides the affidavit of her daughter Ms. Langston which states that defendant wanted plaintiff to bring an interpreter to future appointments. Plaintiff also points to a note written by defendant on plaintiff's chart, that defendant misunderstood the exact location of plaintiff's pain due to poor communication. Finally, plaintiff submits a note written by defendant which instructs plaintiff to see an ophthalmologist, and suggests that she "take someone with her who signs so you can explain problem & answer their questions completely."

The burden of proof shifts to defendant to prove that she did not refuse to hire an interpreter for plaintiff, nor did she refuse to treat plaintiff in the future. Defendant may attempt to show that an interpreter was not necessary to ensure effective communication with plaintiff during her medical appointments. Furthermore, places of public ac-

commodation are exempt from complying with the ADA if they can demonstrate that taking such steps would fundamentally alter the nature of the services being offered, or would result in an undue burden. 42 U.S.C. § 12182(b)(2)(A)(iii). Defendant, however, admitted at her deposition that she could afford to pay Ms. Ferrero's fee for interpreter services.

Defendant maintains that her letter to Ms. Ferrero was a protest of the ADA, and that she could adequately communicate with plaintiff by passing notes back and forth. The issue is how far defendant was willing to take her protest. It is true that plaintiff did not ask defendant what she intended by her letter, but it is not implausible for plaintiff to believe that defendant meant her words literally. Plaintiff has submitted evidence which would tend to show that passing notes did not result in effective communication with defendant. Commentary by the Department of Justice states that "[i]t is not difficult to imagine a wide range of communications involving areas such as health, legal matters, and finances that would be sufficiently lengthy or complex to require an interpreter for effective communication." 28 CFR § 36.303, App. B.

Plaintiff has come forth with enough evidence to survive summary judgment on her ADA claim. Plaintiff, however, is not entitled to money damages under the ADA, which limits the remedies available to private individuals to those set forth in the Civil Rights Act of 1964, 42 U.S.C. § 2000a–3(a). 42 U.S.C. § 12188(a)(1). Such remedies include permanent or temporary injunctions and restraining orders. Only when the Attorney General becomes involved in the matter may the Court award monetary damages to aggrieved persons. 42 U.S.C. § 12188(b)(2)(B). Plaintiff is permitted to seek injunctive relief under the ADA, as well as attorneys fees. 42 U.S.C. §§ 12188(b)(2), 12205.

## B. *Rehabilitation Act of 1973*

■ Defendant next seeks summary judgment on plaintiff's claim brought under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* Subchapter V of the Act covers Rights and Advocacy, and § 504 specifically addresses nondiscrimination under federal grants and programs. 29 U.S.C. § 794. That section provides:

No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity conducted by any Executive agency ... 26 U.S.C. § 794.

To establish a *prima facie* violation of section 504, plaintiff must prove that: (1) she is a "handicapped person" under the Act; (2) she is "otherwise qualified" for participation in the program; (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of her handicap; and (4) the relevant program or activity receives federal financial assistance. *Doherty v. Southern College of Optometry,* 862 F.2d 570, 573 (6th Cir.1988). In the present case, defendant concedes that Ms. Mayberry is a handicapped person for purposes of the Act, and that defendant's office receives federal funds. There is also no issue that plaintiff is otherwise qualified to receive medical treatment from defendant. In support of a finding that plaintiff has been denied future medical treatment solely by reason of her handicap, plaintiff sets forth enough evidence, principally the February 22, 1993 letter, to state a *prima facie* case. As discussed at length above, proof of discriminatory intent is not a separate element of stating a *prima facie* case. Defendant's motion for summary judgment on the Rehabilitation Act claim is DENIED.

## C. *Michigan Handicappers' Civil Rights Act*

■ Defendant also seeks summary judgment on plaintiff's claim under the Michigan Handicappers' Civil Rights Act ("MHCRA"). M.C.L.A. § 37.1101 *et seq.* The Michigan Act guarantees full and equal utilization of public accommodations and services without discrimination because of a handicap. A public accommodation is defined in section 301 to include a health facility of any kind

whose services are made available to the public, such as defendant's medical office. M.C.L.A. § 37.1301(a).

Article 3 of the MHCRA addresses places of public accommodation and public services, and provides that a person shall not:

(a) Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation or public service because of a handicap that is unrelated to the individual's ability to utilize and benefit from the goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids. Section 302; M.C.L.A. § 37.1302.

Section 103 defines the term "handicap" as:

(i) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:

(B) For purposes of article 3, is unrelated to the individual's ability to utilize and benefit from a place of public accommodation or public service. M.C.L.A. § 37.1103.

The phrase "unrelated to the individual's ability" is defined at § 103(*l*) as:

*[W]ith or without accommodation,* an individual's handicap does not prevent the individual from doing 1 or more of the following:

(ii) For purposes of article 3, utilizing and benefiting from a place of public accommodation or public service. (emphasis added).

Plaintiff must first show that she is handicapped pursuant to the definition in the MHCRA. Plaintiff must demonstrate that her handicap, i.e., her deafness, is unrelated to her ability to utilize and benefit from defendant's medical services. It is clear that, with the aid of a sign language interpreter, plaintiff can utilize and benefit from the medical services offered in defendant's office. Therefore, plaintiff is handicapped for purposes of the MHCRA.

The burden then shifts to defendant to show a legitimate, nondiscriminatory reason for her refusal to accommodate plaintiff, or

that indeed plaintiff was never refused an accommodation in the first place. *Crittenden v. Chrysler Corp.,* 178 Mich.App. 324, 331, 443 N.W.2d 412 (1989). In this case, defendant sent a letter to the interpreter, a copy of which letter was also sent to plaintiff, stating that she could not afford to treat plaintiff in the future. As discussed above, there is ample evidence to establish an issue of fact whether defendant intended to discriminate against plaintiff and withhold future accommodation, or was merely protesting her duty to accommodate handicapped patients. Defendant's motion for summary judgment on plaintiff's claim under the MHCRA is therefore DENIED.

Defendant's motion for summary judgment is DENIED in its entirety.

So Ordered.