**UNITED STATES of America**

v.

**Drew B. MORVANT, D.D.S., et al.**

**Civ. A. No. 93–3251.**

United States District Court,
E.D. Louisiana.

March 23, 1995.

Glenn Kenneth Schreiber, U.S. Attorney's Office, New Orleans, LA, Sharon N. Perley, Lead Counsel, U.S. Dept. of Justice, Public Access Section, Civil Rights Division, Washington, DC, for plaintiff.

Stephen M. Pizzo, William Wesley Shaw, Jr., Blue, Williams & Buckley, Metairie, LA, for defendants.

### ORDER AND REASONS

DUVAL, District Judge.

Before the Court are a Motion for Summary Judgment filed by the United States of America (the "United States or "the Government"), a Motion for Summary Judgment filed by Drew B. Morvant, D.D.S., and Drew B. Morvant, a Professional Dental Corporation (referred to collectively as "Morvant") and a Motion to Dismiss filed by Morvant. Having entertained oral argument on February 8, 1994, and having reviewed the voluminous pleadings, exhibits, deposition testimony, affidavits and the applicable law, the Court finds that the United States' Motion for Summary Judgment is meritorious rendering Morvant's Motion for Summary Judgment moot. Finally, Morvant's Motion to Dismiss is without merit as well.

### BACKGROUND

Dr. Drew Movant practices dentistry as a professional dental corporation. He owns his professional corporation and is its president and sole director.

The Department of Justice, under the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. §§ 12101–12213 (West Supp.1994) filed suit against Dr. Morvant, personally, and his dental corporation for refusing to provide dental care to Ismael Pena, Russell Hodgkinson, and other persons with HIV or AIDS, solely on the basis of their HIV-positive status. The United States contends that it is entitled to summary judgment on the issue of liability because there are no relevant contested issues of fact in this regard and that Morvant has violated the statute and is entitled to judgment as a matter of law. Morvant has filed in effect a cross-motion with respect to liability. Moreover, Morvant also contends that "if this Honorable Court rules that in fact the Act prohibited Dr. Morvant's referrals of Mr. Hodgkinson and Mr. Pena, the Act itself is unconstitutional in prohibiting these referrals." To that end Dr. Morvant seeks to dismiss the suit "for lack of subject matter jurisdiction."

The facts that brought rise to this suit are as follows:

*Ismael Pena*

Ismael Pena and his partner, Patrick Dunne, were longstanding patients of Morvant's. According to the deposition testimony of Dunne and the affidavit of Pena, in November of 1992, Dunne told Morvant that Pena had AIDS. Morvant at that time mentioned that his hygienist had noticed thrush in Pena's mouth before, but thought it was the flu. In February of 1993, Pena attempted to make an appointment with Morvant and was told that he would no longer be able to provide services. Pena and Dunne both contend that Morvant told each separately that he could not keep his staff if he required them to treat AIDS patients. Without examining Pena's mouth or contacting Pena's treating physician to consult about his medical condition, Morvant referred Pena to Dr. Kathryn Creely Sturm ("Sturm"), who Morvant contends specializes in the treatment of AIDS/HIV patients. Morvant contends that he referred Pena to Sturm because he believed that AIDS/HIV patients required more specialized care and that he had not kept abreast of those things which he needed to know to treat an AIDS patient properly.

*Hodgkinson*

Hodgkinson arrived for a previously scheduled dental cleaning and dental examination

in June of 1993. He filled out a number of dental forms and was escorted to the hygienist's chair. She asked him if he had any diseases that "we should know about" to which he responded that he had tested positive for HIV. Before she or Dr. Morvant examined his mouth, the hygienist informed Hodgkinson that the defendants were not equipped to treat him and referred him to Sturm.

Thus, the Government contends that Morvant discriminated against these two individuals as proscribed by the ADA. It also seeks damages for "other persons aggrieved" by Morvant's alleged practices.[1] Morvant contends however that the matter should be dismissed because the ADA is unconstitutional, as regulating activities outside of the scope of the Commerce Clause and of the Fourteenth Amendment to the United States Constitution. The Court will first address the Government's Motion for Summary Judgment. It will then address Morvant's Motion to Dismiss.

## STANDARD FOR GRANTING SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When a moving party satisfies the requisites of Rule 56(c), a motion for summary judgment should be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is

some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a **genuine issue for trial.**" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis supplied).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Id.* However, all inferences to be drawn must be in favor of the nonmoving party.

Finally, the court notes that the substantive law determines materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The court now turns to the merits of the Government's Motion for Summary Judgment with these standards and facts in mind.

## ANALYSIS OF ADA VIOLATIONS ALLEGED BY THE GOVERNMENT

Because the ADA is a relatively new statute, there is a paucity of case law concerning the burden of proof thereunder. As noted in *Mayberry v. Von Valtier*, 843 F.Supp. 1160 (E.D.Mich.1994):

the construction provision of the ADA states that the standards of Title V of the Rehabilitation Act of 1973, and its regulations, are to apply, except where the ADA has explicitly adopted another standard. 42 U.S.C. § 12201(a).

---

1. The United States asks the Court to order that:

(1) Defendants be enjoined from refusing to provide treatment to persons with HIV or AIDS, on the basis of their actual or perceived HIV or AIDS status;

(2) Defendants be enjoined from having a blanket policy of "referring" out all people with HIV or AIDS to other general dentists;

(3) Defendants shall advertise that they treat people with HIV or AIDS;

(4) Defendants shall adopt and post a policy of non-discrimination on the basis of disability, including HIV and AIDS;

(5) Dr. Morvant and his staff be required to undergo training concerning HIV and the practice of dentistry;

(6) Defendants shall pay to the United States a civil penalty of $50,000 to vindicate the public interest; and

(7) a hearing on the issue of damages to Pena and Hodgkinson be had to determine these.

The *Mayberry* court continued finding that a modified *McDonnell Douglas/Burdine* [2] burden shifting analysis should apply to an ADA case, and this Court concurs with the analysis.

■ Thus, in order for the Government to prevail in its attempt to obtain summary judgment with respect to its claims against Morvant, it must first prove that (1) the subject individuals had a disability; (2) that Morvant's office is a place of public accommodation; and (3) that the subject persons were denied full and equal medical treatment because of their disability. If the Government succeeds in establishing this *prima facie* case, the burden shifts to Morvant to prove either that the subject persons were not denied medical treatment, or that such denial was not unlawful. Then, the burden shifts back to the Government to rebut defendant's reasons as a pretext for unlawful discrimination. *Mayberry*, 843 F.Supp. at 1166.

### The Prima Facie Case

The United States contends that Morvant is liable under Title III of the ADA, 42 U.S.C. §§ 12181–88, because:

1) the aggrieved individuals—Pena, Hodgkinson, and other persons with HIV or AIDS—were individuals with disabilities;

2) Morvant owned or operated a place of public accommodation; and

3) Morvant discriminated against the aggrieved individuals by denying them full and equal enjoyment of medical treatment because of their disabilities (i.e. because they were perceived as being HIV-positive or having AIDS).

42 U.S.C. § 12182(a) & 42 U.S.C. § 12182(b).

■ AIDS/HIV-positive are both disabilities under the Department of Justice regulations promulgated pursuant to the ADA. 28 C.F.R. § 36.104(1)(iii); *Howe v. Hull*, 873

F.Supp. 72, 78 (N.D.Ohio 1994). Furthermore, the Court has previously ruled that Morvant owned and operated a place of public accommodation as defined by the ADA. *United States v. Morvant*, 843 F.Supp. 1092, 1094 (E.D.La.1994).[3] Accordingly, it is beyond cavil that the first two criteria are met.

Thus, the third criteria, discrimination, must be demonstrated for the Government to succeed in proving its prima facie case. The statute contains both general and specific prohibitions against discrimination based on a disability. Generally prohibited in relevant part under section 12182 is:

> to subject an individual or class of individuals on **the basis of a disability or disabilities of such individual or class,** directly, or through ... other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the ... accommodation;

42 U.S.C. § 12182(b)(1)(A)(i) (emphasis added). Specifically prohibited with respect to discrimination under 12182(b)(2)(A)(i) and (ii) are:

i) the use of unnecessary eligibility criteria that screen out or tend to screen out persons with disabilities; and

ii) the failure to make reasonable modifications in policies, practices or procedures where such modifications are necessary to afford equal advantages or privileges to persons with disabilities.

The Government contends that Morvant violated each of these.

■ It is clear that with respect to the **general** prohibition against discrimination, Pena and Hodgkinson were denied dental treatment by Morvant on the basis of a disability when they told Morvant or his assistant that each had AIDS or was HIV-positive, respectively, each was denied treatment by Morvant. That fact alone is sufficient to meet the *prima facie* test and shift the bur-

---

**2.** The test so described can be found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and is refined in *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *St. Mary's Honor Center v. Hicks*, —

U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

**3.** The professional office of a health care provider constitutes a public accommodation. 42 U.S.C. § 12181(7)(f).

den to Morvant to prove that his actions were not unlawful.[4]

### Were Morvant's Actions Unlawful? Morvant's Defenses

Morvant responds that contrary to the Pena/Dunne testimony he referred both Pena and Hodgkinson because he believes:

> that HIV-positive and AIDS individuals require specialized treatment and infection control for the **benefit of themselves, for the benefit of other patients, and for the benefit of Dr. Morvant's staff.**

(Exhibit 4, Morvant's Motion for Summary Judgment) ("Defendants' Exhibit). Thus, Morvant raises basically two defenses.

#### Referral

First, Dr. Morvant contends that his referral to Sturm was permitted under the ADA because the "circumstances of the disability [HIV/AIDS] itself" create "specialized complications for the patient's health which Morvant lacked the experience or knowledge to address." Morvant further contends that the ADA does not require and indeed cannot require a physician to keep up with the necessary medical techniques to treat such patients.[5]

Under the regulations that have been promulgated with respect to the ADA, specifically, 28 C.F.R. § 36.302(b)(2)[6], a health care provider may "refer" a patient. This "referral" is subject to two restrictions. A health care provider may refer a patient only if:

1) the treatment being sought is outside the referring provider's area of specialization; **and**

2) in the normal course of operations, the referring provider would make a similar referral for an individual without a disability who seeks or requires the same

treatment or services. (emphasis added).

Morvant thus contends that this "referral" was protected by this safe harbor.

#### Direct Threat—Significant Risk

The other defense implicit in Morvant's argument is that because of the "significant risk" of infection to his hygienists and Dr. Morvant himself, Morvant is protected from these allegations of discrimination based on 42 U.S.C. 12182(b)(3). This section states in relevant part:

> Nothing in this subchapter shall require an entity to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of such entity **where such individual poses a direct threat to the health or safety of others.** The term "direct threat" means a significant risk to the health or safety of others **that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services.** (emphasis added).

Thus, with respect to this second defense, the issues become: (1) whether HIV-positive and AIDS patients pose a "significant risk" to the health and safety of Morvant and his staff and (2) whether Morvant could have modified his "policies, practices or procedures or provided auxiliary aids or services" so as to eliminate the risk.

### Are these "defenses" pretextual?

#### Referral

■ In the context of both Pena and Hodgkinson, both persons simply sought a "prophy" or teeth cleaning. It is undisputed that Morvant and his staff were eminently qualified to clean teeth, indeed Morvant had been doing so with respect to Pena for 11

---

**4.** As the Government has proved this instance of discrimination, it is unnecessary to address the other two "specific" allegations.

**5.** In reality, this argument is better covered within the context of "modifications because of direct threat to the provider's health" which is discussed *infra* at 1165–1167.

**6.** Morvant also contends that the Court should ignore the promulgated regulations because Con-

gress did not intend to circumscribe a doctor's ability to refer a patient to the degree found in the regulation. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). The Court finds this contention meritless upon review of the legislative history read as a whole and rejects this argument.

years. Thus, it is impossible for Morvant to contend that cleaning teeth was outside of his "specialization." Furthermore, it is clear that but for the disability—AID/HIV—he would not have "referred" these two persons to a "specialist."

Morvant counters this argument by contending that the disease/disability itself created specialized complications requiring the referral. The Government contends that this is simply a false premise.

To that end, the Government has presented the declaration of Enid A. Neidle, Ph.D. This expert holds a Ph.D. in physiology from the College of Physicians and Surgeons at Columbia University and is currently a Senior Consultant to the Dean and Director of the Office of Research Administration at the Columbia University School of Dental and Oral Surgery. From June 1, 1985 to December 31, 1992, she was first part-time (until March 31, 1986) and then full-time Assistant Executive Director, Scientific Affairs for the American Dental Association ("the Association"). She has written and lectured extensively on the subjects of infection control in dentistry, the epidemiology and characteristics of HIV infection, and the ethical obligation for dentists to treat persons with HIV or AIDS.

She attested that the Association does not recognize a specialty in the treatment of persons with AIDS or who are HIV positive. There are only eight specialties recognized by the Association: orthodontics, periodontics, prosthodontics, dental public health, endodontics, oral pathology, oral and maxillofacial surgery, and pediatric dentistry. (Plaintiff's Exhibit 60, ¶ 8).

She also stated that Morvant's policy of sending all patients with HIV or AIDS to another general dentist—regardless of their then-current medical status, dental condition, or dental needs—is in direct contravention of the Association's policies and constitutes a breach of Morvant's professional and ethical obligations. (Plaintiff's Exhibit 60, ¶ 15).

The Government also provided the declaration of Deborah Greenspan, B.D.S., DSc. She holds a Bachelor of Dental Surgery and a Doctor of Science in oral medicine from the University of London, England and is currently a Clinical Professor of Oral Medicine at the University of California at San Francisco. She has written and lectured extensively on HIV and the practice of dentistry. Her writings, education and professional experience are outstanding and noteworthy as evidenced by her Curriculum Vitae. (Plaintiff's Exhibit 58).

She affirmed that:

There is no question that Dr. Morvant had the capacity to utilize universal precautions in his general dental practice.

No additional infection control procedures—above and beyond universal precautions—are required to provide dental treatment to persons with HIV infection or AIDS.

Similarly, no special training or expertise, other than that possessed by a general dentist, is required to provide general dental care, including dental examinations and dental cleanings, to persons with HIV infection or AIDS. No such specialty is recognized by the dental profession.

Thus, there is no medical or scientific support for Dr. Morvant's policy of "referring" all patients who informed him that they had HIV or AIDS to another general dentist for treatment. Dr. Morvant's contention that persons with HIV or AIDS require specialized treatment and infection control "for the benefit of themselves, for the benefit of other patients, and for the benefit of Dr. Morvant's staff" is simply wrong. Dr. Morvant was fully capable of utilizing universal precautions, and, as a general dentist, Dr. Morvant had sufficient expertise and training to provide general dental care to persons with HIV or AIDS.[7]

(Plaintiff's Exhibit No. 58, ¶¶ 10–13).

Furthermore, this expert opined that the "referrals" in question were not appropriate because Morvant did not examine the individ-

---

7. It should be noted that under the ADA, which is modeled after the Rehabilitation Act, there is no need for the Government to prove "a hostile discriminatory purpose or subjective intent to discriminate." *Doe v. Attorney General of the United States,* 44 F.3d 715 (9th Cir. Jan. 18, 1995).

uals' mouths, inquire into their medical status, or contact their personal physicians. (Plaintiff's Exhibit 58, ¶¶ 20–21).

Finally, the Government also presented the declaration of Donald Wayne Marianos, D.D.S., M.P.H. He holds a Masters in Public Health from Loma Linda University and a Doctor of Dental Surgery from the Indiana University School of Dentistry. He has also coordinated epidemiologic investigations involving dental health care workers with HIV/AIDS as well as prevention of HIV/AIDS transmission in dental care settings. He assisted in the development of the Center for Disease Control and Prevention ("CDC") Guidelines and Recommendations with regard to these topics. From August of 1989 to the present, he has served as a Captain in the United States Public Health Service at the CDC.

He opined that in 1986 the CDC issued Recommended Infection Control Practices for Dentistry. The theory behind what has come to be known as "universal precautions" is that since it is impossible to reliably identify all patients infected with HIV or other blood-borne pathogens through medical history and examination, precautions should be consistently used **for all patients.** These precautions were updated in 1987 and finally in 1993. Specifically he states:

> After a review of relevant depositions, as well as a physical inspection of Dr. Morvant's office, it is clear that he and his staff had the capacity to follow proper infection control procedures.
>
> No infection control procedures beyond the use of universal precautions are necessary in providing routine dental care to persons with HIV or AIDS. The CDC does not recommend the use of infection control procedures beyond those cited in the *Recommended Infection Control Practices for Dentistry, 1993* for the provision of routine dental treatment to persons with HIV or AIDS.
>
> Referral because of the need for "special" infection control precautions of persons with HIV or AIDS is not appropriate.
>
> If dentists, including general dentists such as Dr. Morvant, follow universal precautions in their practice, persons with HIV or

AIDS or other blood-borne pathogens can be safely treat in the dental setting.

> No special expertise beyond that of a general dentist is required to provide routine dental care to a person with HIV or AIDS.
>
> Dr. Morvant had the expertise and the available infection control procedures to safely provide routine dental services to Mr. Pena, Mr. Hodgkinson and other persons with HIV and AIDS.

(Plaintiff's Exhibit 59, ¶¶ 7–12).

Finally, Dr. Sturm, the doctor to whom Morvant would "refer" these patients testified that she was not a "specialist" rather she is a general dentist. (Plaintiff's Exhibit 15, Dep. of Dr. Sturm at 59).

Thus, the Government has presented overwhelming and compelling evidence that the "referral" was a pretext.

Morvant has failed to present any countervailing affidavits or deposition testimony from a single, qualified expert in the field to testify so as to raise a single issue of material fact with regard to the referral issue. Rather Morvant has presented his own "stipulation" and various scientific articles that discuss in general the "uncertainty" of AIDS' causes, treatment and cure. Indeed, at Paragraph 18 of Morvant's Statement of Contested Facts, Morvant has "disputed" the statement that "it is a certainty that as long as a dentist utilizes universal precautions, HIV positive patients may be safely treated in the dental office," Morvant relied on two pages from the magazine *Science,* the May 1993 edition, wherein there is a general discussion of the uncertainty surrounding AIDS. Simply stating that there is a dispute without some competent evidence to support that position is not sufficient to create an issue of fact where there is such overwhelming expert testimony presented to the contrary.

Morvant also provided the Court with his counsel's interpretation of various disclaimers contained in a number of materials published by the Association to stand for the proposition that the Association "recognized as recently as 1992 that specialized knowledge and protocols were necessary to provide adequate treatment of HIV/AIDS individuals." (Memorandum in Opposition to Gov-

ernment's Motion for Summary Judgment at 12).

Morvant also produced for the Court an Association publication, "Patients with Human Immunodeficiency Virus (HIV) Infection and Acquired Immune Deficiency Syndrome (AIDS)" published in June of 1993.[8] In this publication, it is noted that in a **severely** immunocompromised patient, an oral infection can become life-threatening and that oral health care should be planned with consideration. (Defendants' Exhibit 4 at 4). It further states that:

> HIV-infected patients can safely receive dental care. Timing or extent of the treatment plan may need to be modified according to the immunologic and hematologic status and general medical condition of the patient.

*Id.* at 5. Finally at 9 of the same document, the paper continues:

> The potential exists for complications resulting from dental treatment in hematologically (granulocytopenia, anemia, thrombocytopenia) or immunologically compromised patient with HIV infection. These complications include delayed healing, postoperative infections, development of antibiotic resistant microbial strains and postoperative bleeding.

*Id.* at 9.

These articles without a single affidavit or deposition testimony of an expert stating that a referral was necessary or justified and that the universal precautions were not enough simply will not create a substantive issue of fact as required under the rule. Furthermore, Morvant made no attempt to determine the immunologic and hematologic status and general medical condition of Pena or Hodgkinson. Morvant has not rebutted the Government's presentation. As stated in Fed.R.Civ.P. 56(e):

> When a motion for summary judgment is made and supported as provided by this rule, an adverse party **may not rest upon the mere allegations or denials of the adverse party's pleading,** but the adverse party's response, **by affidavits or as otherwise provided in this rule,** must set forth **specific facts** showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Thus, the Court finds that the "referral" in this instance is pretextual. He would not have "referred" these persons but for their disability; there is no such thing as a "specialist" for purposes of cleaning teeth.

*Direct Threat—Significant Risk*

■ As previously noted, Morvant's second defense is that because of the "significant risk" of infection to his hygienists and Dr. Morvant himself, Morvant is protected from these allegations of discrimination based on 42 U.S.C. 12182(b)(3). However, the Court believes that his invocation of this statute is pretextual as well.

The Department of Justice has promulgated regulations found at 28 C.F.R. § 36.208 discussing "direct threat" with respect to a public accommodation. The regulation states:

> (a) This part does not require a public accommodation to permit an individual to participate in or benefit from the foods, services facilities, privileges, advantages and accommodations of that public accommodation when that individual poses a direct threat to the health or safety of others.
>
> (b) *Direct threat* means a significant risk to the health or safety of others that cannot be eliminated by a modification of policies practices or procedures or by the provision of auxiliary aids or services.

---

**8.** The Court notes that this article has not been presented in conjunction with any expert testimony so as to be admissible or competent evidence under Fed.R.Evid. 803(18), and thus questions its probative value in creating an issue of fact in the context of a motion for summary judgment. While every "inference" must be lodged in favor of the non-moving party, there must be competent evidence to create the inference.

Furthermore, many of the articles that provided the basis for this publication as evidenced by the footnotes, were authored by Dr. Greenspan, the expert provided by the Government who rejected Morvant's defenses.

(c) In determining whether an individual poses a direct threat to the health or safety of others, a public accommodation **must make an individual assessment,** based on reasonable judgment that relies on **current medical knowledge or on the best available objective evidence to ascertain:** the nature, duration and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures will mitigate the risk. (emphasis added).

These factors codify the standard enunciated by the United States Supreme Court in *School Board of Nassau County, Fla. v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) in which the court found that a person suffering from tuberculosis can be a handicapped person within the meaning of Section 504 of the Rehabilitation Act of 1973.

From the record as it stands, Dr. Morvant did not attempt any type of "individual" assessment. Neither he nor his staff examined either Pena or Hodgkinson's mouths. With respect to the individuals named, the knowledge that they were immunocompromised led Morvant to "refer" them out of his office.

Furthermore, as cited above, there is a plethora of expert testimony presented by the Government in conjunction with this motion that while HIV and AIDS present a severe risk of infection, the severity of which is unquestioned—death at this time—the universal precautions as prescribed by the CDC are universally accepted as "reasonable modifications" of practices that will significantly mitigate the risk. These "reasonable accommodations" were well known at the time Dr. Morvant refused to treat these patients and were substantially utilized by Morvant. (Plaintiff's Exhibit 5, Answers to Plaintiff's Interrogatories (First Set), Nos. 6 and 8). Dr. Morvant again has failed to present to the Court any expert testimony or specific competent evidence that would create a question of fact with regard to this issue. Thus, the refusal to treat because of the danger was pretextual in nature.

Finally, the Court must deal with Morvant's protestation that he had not kept up with the literature and training necessary to treat these types of patients. He stated in his stipulation:

> Dr. Morvant had not kept abreast of all recent developments in the dental treatment of HIV-positive/AIDS individuals and in the prevention of transmission of the HIV virus, so he considered the treatment of HIV-positive/AIDS individuals to be outside of his area of expertise.

Dr. Morvant then presents the Court with argument that presents ignorance as a defense. However the regulations themselves preclude this defense. Dr. Morvant is required to base his decision with respect to risk on "current medical knowledge or on the best available objective evidence to ascertain" the risk involved. 28 C.F.R. § 36.208(c). Dr. Morvant chose to ignore that information and in doing so ran afoul of the law as it now stands.

As so eloquently stated in *Mayberry v. Von Valtier,* 843 F.Supp. 1160, 1166 (E.D.Mich.1994):

> One of the stated purposes of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Congress specifically found that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion [and] the discriminatory effects of ... communication barriers ..." 42 U.S.C. § 12101(a)(5). Given that statement, Congress appears to have intended the ADA to address the discriminatory effect of **benign actions or inaction** as well as intentional discrimination.

While these statements were made in the context of the hearing impaired and with regard to the burden of proof to be applied in an ADA case, there is no reason for their not being equally applicable to an AIDS or HIV-positive individual where such blatant discrimination as demonstrated by Morvant is presented. This is not to say that his was not of the benign character; however, the Congress has spoken to this issue. A law is in place that protects these individuals from discrimination and to find that Morvant's ac-

tions were not prohibited under this statute because of his own purposeful ignorance would allow the rule to be swallowed by the exception. This Court will not embark on a judicial disembowelment of the statute.

## DEFENDANT'S MOTION TO DISMISS

Morvant has moved the Court pursuant to Fed.R.Civ.P. 12(b)(1)(c) (sic) that:

> to the extent Title III of the Americans with Disabilities Act of 1990 prohibits the professional referrals made by defendants, the Americans with Disabilities Act is unconstitutional as regulating activities outside of the scope of the Commerce Clause and of the Fourteenth Amendment to the United States Constitution.

As Congress has not invoked the Fourteenth Amendment with respect to Title III of the ADA, the Court will only address its constitutionality under the Commerce Clause of the Constitution, U.S. Const., art. I, § 8, cl. 3.

Morvant specifically argues that the ADA cannot constitutionally prohibit them from following a policy of refusing routine dental care and allowing them to "refer" such individuals "to a health care provider who had made a study of HIV infection and its treatment and who accepted such referrals." Defendants claim that this is "inconsistent with the normal physician/patient relationship." (Memorandum in Support of Motion to Dismiss at 5). Therefore, because the ADA interferes with that exercise of Morvant's professional judgment, the ADA cannot rationally further the nations' proper goals of affording individuals with disabilities the equal opportunity to receive medical treatment.

■ A court may consider only the following criteria when deciding whether a federal statute operates within the constitutional authority granted under the Commerce Clause:

1) whether there is a rational basis for a congressional finding that a regulated activity affects interstate commerce and

2) whether the means selected by Congress are " 'reasonably adapted to the end permitted by the Constitution.' "

*Preseault v. Interstate Commerce Comm'n,* 494 U.S. 1, 17, 110 S.Ct. 914, 924, 108 L.Ed.2d 1 (1990) (citing *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.,* 452 U.S. 264, 276, 101 S.Ct. 2352, 2360, 69 L.Ed.2d 1 (1981)).

■ Morvant in his Response to Plaintiffs' Second Request for Admission No. 17 and 20 admits to activities which under *Katzenbach v. McClung,* 379 U.S. 294, 296–97, 85 S.Ct. 377, 379–80, 13 L.Ed.2d 290 (1964) and *Pinnock v. International House of Pancakes Franchisee,* 844 F.Supp. 574, 579 (S.D.Ca. 1993), affect interstate commerce and subjects Morvant to liability under Title III of the ADA. Thus, the thrust of Morvant's argument is that the Act is unconstitutional because it prohibits those referrals made by Morvant. As discussed above, the Act does not prohibit all referral; however, the referral under the ADA is permitted:

1) if the treatment being sought is outside the referring provider's area of specialization; and

2) in the normal course of operations, the referring provider would make a similar referral for an individual without a disability who seeks or requires the same treatment or services.

The Court cannot find that these restrictions somehow make the ADA's prohibitions such that there is "no reasonable connection between the regulatory means selected and the asserted ends." *Hodel v. Indiana,* 452 U.S. 314, 323–324, 101 S.Ct. 2376, 2383, 69 L.Ed.2d 40 (1981). Indeed, without such restrictions, the exception would again swallow the rule because the type of pretextual "referral" at issue herein would be permitted.

The Court finds the Motion to Dismiss to be meritless.

## ENFORCEMENT

The parameters of the authority of the Court in a civil action are outlined in 42 U.S.C. § 12188(b)(2) [9]. Having reviewed the

9. The statute states:
   (2) **Authority of court**

In a civil action under paragraph (1)(B), the court—

record, having considered the facts of the case, and taking into consideration what relief the Court finds appropriate, the Court will order that:

1) Defendants be enjoined from refusing to provide treatment to persons with HIV or AIDS, on the basis of their HIV positive status;

2) Defendants be enjoined from having a blanket policy of "referring" out all people with HIV or AIDS to Dr. Creely Sturm or other general dentists;

3) Defendants be required to adopt and post a policy of non-discrimination on the basis of disability, including HIV and AIDS;

4) Defendants and their staff be required to undergo training concerning HIV and the practice of dentistry;

5) a hearing on the issue of damages to Ismael Pena and Russell Hodgkinson will be held on April 7, 1995 at 9:30 a.m.

## CONCLUSION

The ADA is aimed at protecting persons with disabilities. As stated in relation to the Rehabilitation Act, which in the Court's belief is equally applicable here, "discrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect."

*Alexander v. Choate,* 469 U.S. 287, 295, 105 S.Ct. 712, 717, 83 L.Ed.2d 661 (1985). Certainly here, Morvant chose the road of benign neglect which has been blocked by Congress by the ADA. The Court will not judicially tamper with the law. Accordingly,

**IT IS ORDERED** that:

1. The United States' Motion for Summary Judgment is **GRANTED** rendering **MOOT** defendant Morvant's Motion for Summary;

2. Morvant's Motion to Dismiss is **DENIED;**

3. Defendants be enjoined from refusing to provide treatment to persons with HIV or AIDS, on the basis of their HIV positive status;

4. Defendants be enjoined from having a blanket policy of "referring" out all people with HIV or AIDS to Dr. Creely Sturm or other general dentists;

5. Defendants be required to adopt and post a policy of non-discrimination on the basis of disability, including HIV and AIDS;

6. Defendants and their staff be required to undergo training concerning HIV and the practice of dentistry; and

7. A hearing on the issue of damages to Ismael Pena and Russell Hodgkinson will be set at a status conference to be

(A) may grant any equitable relief that such court considers to be appropriate, including, to the extent required by this subchapter—
(i) granting temporary, preliminary, or permanent relief;
(ii) providing an auxiliary aid or service, modification of policy, practice, or procedure, or alternative method; and
(iii) making facilities readily accessible to and usable by individuals with disabilities;
(B) may award such other relief as the court considers to be appropriate, including monetary damages to persons aggrieved when requested by the Attorney General; and
(C) may, to vindicate the public interest, assess a civil penalty against the entity in an amount—
(i) not exceeding $50,000 for a first violation; and
(ii) not exceeding $100,000 for any subsequent violation.
(3) **Single violation**
For purposes of paragraph (2)(C), in determining whether a first of subsequent violation

has occurred, a determination in a single action, by judgment or settlement, that the covered entity has engaged in more than one discriminatory act shall be counted as a single violation.
(4) **Punitive damages**
For purposes of subsection (b)(2)(B) of this section, the term "monetary damages" and "such other relief" does not include punitive damages.
(5) **Judicial consideration**
In a civil action under paragraph (1)(B), the court, when considering what amount of civil penalty, if any is appropriate, shall give consideration to any good faith effort or attempt to comply with this chapter by the entity. In evaluating good faith, the court shall consider, among other factors it deems relevant, whether the entity could have reasonably anticipated the need for an appropriate type of auxiliary aid needed to accommodate the unique needs of a particular individual with a disability.

held telephonically on **April 7, 1995 at 9:30 a.m.**